42 F.3d 633
 66 Fair Empl.Prac.Cas. (BNA) 1540,
66 Empl. Prac. Dec. P 43,455
Aston A. BEADLE, Plaintiff-Appellant, Cross-Appellee,
v.
CITY OF TAMPA, a Florida municipal corporation; and the
Tampa Police Department, Defendants-Appellees,
Cross-Appellants.
 No. 93-3271.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 18, 1995.
 
 Lee Boothby, Boothby & Yingst, Washington, DC, Paul B. Johnson, Johnson & Johnson, Tampa, FL, for appellant.
 Thomas M. Gonzalez, Mark A. Hanley, Thompson, Sizemore & Gonzalez, Tampa, FL, for appellees.
 Barbara Sloan, Sam Marcosson, EEOC, Office of the General Counsel, Washington, DC, for amicus-EEOC.
 Appeals from the United States District Court for the Middle District of Florida.
 Before KRAVITCH and DUBINA, Circuit Judges, and GIBSON*, Senior Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge:
 
 
 1
 Aston Beadle appeals the magistrate court's[1] final judgment in favor of the City of Tampa and Tampa Police Department. The court rejected Beadle's claim that the Department violated Title VII by failing to accommodate his religious practices and by constructively discharging him because of his refusal to work on his Sabbath. The City and Department cross-appeal the court's finding that Beadle did not knowingly and voluntarily sign a release waiving his Title VII rights. We AFFIRM.
 
 I. BACKGROUND
 
 2
 At all times relevant to this lawsuit, Beadle was a practicing member of the Seventh Day Adventist Church. One of the tenets of this faith is the prohibition of secular labor on its Sabbath -- from sundown Friday until sundown Saturday. Beadle passed the City of Tampa's civil service examination, and the Tampa Police Department accepted his employment application. Although aware of his religious practices and the resulting limitations on his work schedule,[2] the Department made no promises to Beadle that he would not be required to work on his Sabbath.
 
 
 3
 Beadle successfully completed the Tampa Police Academy and began the Department's field training program. The sixteen weeks of field training consisted of four phases: a two-week orientation period in which a recruit patrolled a particular area of the city with a field training officer; a four-week period graded by the initial training officer; two four-week periods in which a recruit was assigned to other training squads with different field training officers; and a two-week period and evaluation with the recruit's original field training officer. The Department assigned recruits to several different training officers during the course of their training so that the recruits could experience varying methods of supervision and observe other patrol areas in the city.
 
 
 4
 At the time of Beadle's field training assignment, all of the Department's patrol squads, including the training squads, were scheduled to work for four ten-hour days followed by three days off. Every eight weeks, the shift schedules rotated forward one day. The Department did not allow recruits to use vacation or leave time during their first six months of employment and did not allow any of its employees to trade days off.
 
 
 5
 Beadle was randomly assigned to a training squad that worked Friday through Monday, with Tuesday, Wednesday, and Thursday as his days off. During his first week of field training, Beadle requested the upcoming Saturday off from work in order to observe his Sabbath. Although the Department granted this request, Beadle's supervisor explained to him that future time off may not be possible. The following week, the Department denied Beadle's request for Saturday off. Beadle met with his supervisors and advised them that he would be forced to resign from the Department if he was required to work on his Sabbath. Beadle's supervisors informed him that he must work his assigned shift and that he would not be transferred to another training squad. Beadle then tendered his resignation.
 
 
 6
 During orientation, Beadle had signed a contract that provided if he left the Department and secured employment with another law enforcement agency within two years "from commencement of full-time service as a police officer subsequent to completion of the period of field training," he was obligated to reimburse the City for his hiring and training expenses (approximately $12,000.00). When Beadle submitted his resignation letter, one of his supervisors provided him with a document wherein Beadle agreed not to sue the City or the Department for any matters related to his former employment in exchange for the City's promise not to pursue reimbursement for his hiring and training expenses. Beadle reviewed this document for less than thirty minutes and signed it without consulting an attorney.
 
 
 7
 Beadle then brought this lawsuit against the City and Department, alleging that he was constructively discharged because the defendants failed to reasonably accommodate his religious practices. Beadle claimed that the Department could have assigned him to a field training officer who worked Sunday through Wednesday and had Thursday, Friday, and Saturday off. If he had stayed with this training officer and had not switched during the third phase of training, then he would have been able to observe his Sabbath during the entire sixteen-week training program. Once he had completed his field training, Beadle claimed that the Department could have assigned him to a position with the "downtown squad"--a group of officers who worked only Monday through Friday. The City and Department argued that Beadle had waived his Title VII rights by signing the release, and that in any event, its use of a neutral rotating shift schedule was a reasonable accommodation of Beadle's religious practices. Alternatively, the defendants argued that accommodating Beadle would have created an undue hardship.
 
 
 8
 After a four-day bench trial, the magistrate found that Beadle did not knowingly and voluntarily waive his Title VII rights. The magistrate then determined that requiring the Department to grant shift exceptions would result in a greater than de minimis cost because of the public health, safety, and welfare considerations associated with police work and that the Department's use of a neutral rotating shift system was a reasonable effort to accommodate Beadle under Title VII. "[E]valuat[ing] reasonable accommodation and undue hardship in light of the employment context of each case, the Court is unable to find any authority which would require a public health or safety agency to grant such an employee an exception from the customary neutral rotating shift system used by law enforcement agencies in order to accommodate the Sabbath requirements of the officer." Beadle v. City of Tampa, No. 91-1316, slip op. at 20 (M.D.Fla. Oct. 1, 1993) (unpublished). The magistrate concluded that the City had met its obligation under Title VII and entered judgment in favor of the defendants.[3] Beadle appeals, and the City and Department cross-appeal.
 
 II. DISCUSSION
 A. Release and Waiver
 
 9
 As a preliminary matter, we address the issue of whether Beadle has waived his Title VII rights. An employee may validly waive his Title VII rights in a private settlement with his employer if he knowingly and voluntarily consents to the release. Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 1022 n. 15, 39 L.Ed.2d 147 (1974). In determining whether a release was knowingly and voluntarily entered, the factors that guide a court include: the plaintiff's education and business experience; the amount of time the plaintiff considered the agreement before signing it; the clarity of the agreement; the plaintiff's opportunity to consult with an attorney; the employer's encouragement or discouragement of consultation with an attorney; and the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled. Gormin v. Brown-Forman Corp., 963 F.2d 323, 327 (11th Cir.1992) (citing Bormann v. AT & T Communications, Inc., 875 F.2d 399, 403 (2d Cir.), cert. denied, 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989)).
 
 
 10
 In this case, the magistrate noted that Beadle spent a short amount of time reviewing the document and that he did not consult with an attorney. Although the Department did not discourage Beadle from consulting with an attorney, given Beadle's stressful financial situation, the magistrate was unconvinced that he had a fair opportunity to do so. Moreover, the contract for reimbursement created a financial obligation when a recruit secured other law enforcement employment within two years after completing field training and commencing full-time service. Because Beadle had never completed his field training and started full-time service, he was arguably never indebted to the City for his hiring and training expenses. After examining the record, we cannot conclude that the magistrate court clearly erred in finding that Beadle did not knowingly and voluntarily sign the release waiving his Title VII rights.
 
 
 11
 B. Reasonable Accommodation and Undue Hardship
 
 
 12
 Title VII of the Civil Rights Act of 1964, as amended, prohibits an employer from discriminating against an employee on the basis of "race, color, religion, sex, or nation origin." 42 U.S.C. Sec. 2000e-2(a)(1). The statute defines the term "religion" to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. Sec. 2000e(j). "The employer violates the statute unless it 'demonstrates that [it] is unable to reasonably accommodate ... an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business.' " Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 68, 107 S.Ct. 367, 372, 93 L.Ed.2d 305 (1986) (quoting 42 U.S.C. 2000e(j)).
 
 
 13
 Recognizing that the phrases "reasonable accommodation" and "undue hardship" are not defined under the statutes, "[e]ach case necessarily depends upon its own facts and circumstances, and in a sense every case boils down to a determination as to whether the employer has acted reasonably." United States v. City of Albuquerque, 545 F.2d 110, 114 (10th Cir.1976), cert. denied, 433 U.S. 909, 97 S.Ct. 2974, 53 L.Ed.2d 1092 (1977). Once an employer demonstrates that it reasonably accommodated an employee's religious needs, the statutory inquiry ends. Ansonia, 479 U.S. at 68, 107 S.Ct. at 371-72. "[T]he extent of undue hardship on the employer's business is at issue only where the employer claims that it is unable to offer any reasonable accommodation without such hardship." Id. at 68-69, 107 S.Ct. at 372. The Supreme Court has described "undue hardship" as any act requiring an employer to bear more than a "de minimis cost" in accommodating an employee's religious beliefs. Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84 n. 15, 97 S.Ct. 2264, 2277 n. 15, 53 L.Ed.2d 113 (1977). The Court has also recognized that the phrase "de minimis cost" entails not only monetary concerns, but also the employer's burden in conducting its business. Id.
 
 
 14
 On appeal, the parties concentrate their arguments on whether the Department's neutral rotating shift system was a reasonable accommodation.[4] We believe, however, that the parties have unduly focused their arguments on the system itself and ignored the magistrate's determination that requiring the Department to grant shift exceptions to Beadle would result in a greater than de minimis cost in light of the public health, safety and welfare considerations associated with police work.
 
 
 15
 Relying on Beadle v. Hillsborough County Sheriff's Dep't, 29 F.3d 589 (11th Cir.1994), the City and Department argue that a neutral rotating shift system is necessarily a reasonable accommodation. However, in addition to a neutral rotating shift system, the Hillsborough County Sheriff's Department allowed its employees to trade days off.[5] In Hillsborough, this Court concluded that "voluntary swaps instituted by employers within neutral rotating shift systems constitute reasonable accommodations under Title VII." Id. at 593.
 
 
 16
 Aside from granting Beadle his first Saturday off from work, the magistrate found that the Department did nothing to accommodate Beadle other than the neutral rotating shift system. The magistrate also noted that Title VII does not require an employer to assure that an employee has the opportunity to observe his religious practices at all costs. We believe that the magistrate's decision was correctly founded on its analysis of undue hardship, rather than on reasonable accommodation.
 
 
 17
 Our reading of the magistrate's judgment finds support in the fact that the court heavily relied on Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), a case involving undue hardship. See Ansonia, 479 U.S. at 68-69, 107 S.Ct. at 371-72 ("As Hardison illustrates, the extent of undue hardship on the employer's business is at issue only where the employer claims that it is unable to offer any reasonable accommodation without such hardship."). In Hardison, the Supreme Court explained:
 
 
 18
 It was essential to [the employer]'s business to require Saturday and Sunday work from at least a few employees even though most employees preferred these days off.... In considering criteria to govern this allocation, [the employer] had two alternatives: adopt a neutral system, such as seniority, a lottery, or rotating shifts; or allocate days off in accordance with the religious needs of its employees. [The employer] would have had to adopt the latter in order to insure [plaintiff] and others like him of getting the days off necessary for strict observance of their religion, but it could have done so only at the expense of others who had strong, but perhaps nonreligious, reasons for not working on weekends....
 
 
 19
 Title VII does not contemplate such unequal treatment.... It would be anomalous to conclude that by "reasonable accommodation" Congress meant that an employer must deny the shift and job preference of some employees ... in order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far.
 
 
 20
 432 U.S. at 80-81, 97 S.Ct. at 2275 (emphasis added).
 
 
 21
 The Tampa Police Department is a twenty-four hour a day, seven-day a week, three hundred sixty-five day a year agency that must allocate work schedules among over nine hundred employees. More importantly, the Department is charged with protecting the health, safety, and welfare of its citizenry. The Department chose to implement a rotating shift schedule, randomly assign recruits to shifts, and expose its recruits to a variety of training officers. In order to accommodate Beadle's religious practices, the Department would have been forced to assign him to another training squad and to not reassign him during the third phase of training. Beadle admits that he would not have experienced the educational benefits of working with different training officers, but argues that this phase of the training was not very important.[6]
 
 
 22
 We agree with the magistrate court's refusal to interfere with the Department's scheduling and training programs. When the employer's business involves the protection of lives and property, "courts should go slow in restructuring [its] employment practices." Albuquerque, 545 F.2d at 114. We conclude that the magistrate court did not err when it found that requiring the Department to grant shift exceptions would result in a greater than de minimis cost and that the City had met its obligation under Title VII.
 
 III. CONCLUSION
 
 23
 Accordingly, we AFFIRM the magistrate court's judgment.
 
 
 
 *
 Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 The parties consented to trial by the magistrate judge
 
 
 [2]
 When he was hired, the Department was also aware that Beadle had a religious discrimination claim pending against his prior employer, the Hillsborough County Sheriff's Office
 
 
 [3]
 Beadle's discrimination lawsuits against the Hillsborough County Sheriff's Department and the Tampa Police Department were tried ad seriatim. The court also entered judgment in favor Hillsborough, and this Court affirmed in Beadle v. Hillsborough County Sheriff's Dep't, 29 F.3d 589 (11th Cir.1994)
 
 
 [4]
 The City and the Department do not dispute the court's finding that Beadle established a prima facie case of religious discrimination: (1) that he had a bona fide belief that compliance with an employment requirement would be contrary to his religious belief or practice; (2) that he informed his employer about the conflict; and (3) that he was discharged or penalized for failing to comply with the conflicting employment requirement. See Beadle v. Hillsborough County Sheriff's Dep't, 29 F.3d 589 (11th Cir.1994)
 
 
 [5]
 In the case at hand, the issue of whether employees were allowed to trade days off is a red herring; recruits were not considered part of the regular work assignment and were not replaced when absent
 
 
 [6]
 The fact that the Department later changed its field training program and eliminated this part of the training process is irrelevant