### Steven LOBECK, Plaintiff,

v.

### CITY OF RIVIERA BEACH, and Gerald Adams, in his official capacity as City Manager, Defendants.

### No. 95–8732–CIV.

United States District Court,
S.D. Florida.

June 11, 1997.

---

possible incarceration. (Day should also be made aware of Rule 35(a), Federal Rules of Civil Procedure.)

Isidro Manuel Garcia, Garcia, Elkins & Carbonell, West Palm Beach, FL, for Plaintiff.

Gerald Alphonso Williams, Mack, Williams, Haygood & McLean, Boca Raton, FL, for Defendant.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

RYSKAMP, District Judge.

THIS CAUSE came before the Court upon defendant's Motion for Summary Judgment [DE 56], filed May 8, 1997. Plaintiff has responded in opposition, and defendant has replied. In this case, the Court must decide whether plaintiff has waived his right to bring a Title VII claim against his employer, and, alternatively, whether he has created a genuine issue of material fact regarding the alleged racial causes of his demotion. For the reasons explained below, the Court concludes that defendant's motion for summary judgment must be denied.

## I. BACKGROUND

Plaintiff Stephen Lobeck has worked as a police officer for the City of Riviera Beach for more than twenty years. By January of 1993, Lobeck had risen to the rank of sergeant. Events in that month led to his eventual demotion to the rank of officer. A rookie officer named Andrew Woronka released an intoxicated young man after an arrest. Shortly after his release, the young man received severe injuries from a hit-and-run driver. During the course of the subsequent investigation into the premature release, Lobeck allegedly directed subordinate officers to cover-up the victim's identity, and then lied to other police officers about the affair.

Lobeck vigorously denies these allegations. The Police Chief, Lorezno Brooks, believed them to be true. On March 21, 1993, Brooks notified Lobeck that he intended to recommend to the City Manager that Lobeck be terminated.

The Police Benevolent Association Collective Bargaining Agreement governs Lobeck's employment relationship with the City. Article 27 of the agreement entitled Lobeck to a review by a three-member Peer Disciplinary Review Board. Lobeck chose one member, Brooks chose the second, and the first two members chose the third. All three were white men. The Board met, heard testimony from ten police officers, concluded that Lobeck was guilty as charged, and recommended that he be demoted to officer and suspended for fifteen days.

Despite the Board's recommendation, Brooks continued to urge the City Manager to terminate Lobeck. At this point, Lobeck's attorney, Moses Baker,[1] entered into negotiations with the City Manager. According to the City, these negotiations resulted in an agreement whereby Lobeck would be demoted, take a pay cut, and serve a suspension, but would not be terminated. Mr. Baker also understood all of the issues between Lobeck and the City to have been settled. Baker Depo. at 12. The parties, however, never reduced this purported agreement to writing, and Lobeck claims that he never consented to any such deal.

The paper trail in the record reveals the following. On May 7, 1993, City Manager Tony Smith wrote a letter to Lobeck, informing him that he was suspended without pay for thirty working days, that he would be demoted to the rank of officer upon his return, that he would not be eligible to seek a promotion for five years, and that he would have to submit to a psychological evaluation within sixty days of his return. Plaintiff's Ex.3. The letter also specifies that "[y]ou may, if you so desire, appeal this decision through the proper grievance procedure." *Id.* On May 17, Mr. Baker wrote Lobeck,

---

1. Mr. Baker has since become a Palm Beach County Circuit Court Judge.

stating that "[t]his particular letter will serve as confirmation of the fact that you and I have agreed that there will be no appeal of the City Manager's decision relative to discipline in this matter." Defendant's Ex. H. Mr. Baker wrote back to Smith on May 18, indicating that "Officer Lobeck has decided that he will not appeal this decision. Accordingly, this will forever conclude this particular matter." Plaintiff's Ex. 2. On May 21, Lobeck filed a grievance with the City. Defendant's Ex. E. The handwriting on the form is not entirely legible, but appears to indicate the following: "On May 1993, I was demoted to the rank of police officer. Included in this demotion was an approximate [illegible] cut in pay when it should of been 5% loss of supervisory pay. All other items I do accept as my discipline and appreciate the City manager's ruling." A letter from Moses to Lobeck on July 12 indicates that Moses continued to believe that the matter had been finally settled: "I would like to make this very clear. We negotiated a settlement to save your employment which included no appeals." Defendant's Ex. H.

Undeterred by his attorney's insistence that the matter is settled, Lobeck has now brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging that the City demoted him for racial reasons. Lobeck is white, and a majority of the City's residents are black. According to Lobeck, the City has a history of discriminating against white police officers in favor of black police officers. In this case, he offers a number of examples of black police officers engaging in egregious conduct for which the City did not terminate them. He also argues that the offense with which he was charged could not even result in termination under the police department's Rules and Regulations, thus evidencing a racial motive in Brooks' (who is black) insistence upon termination as the only sanction. The City denies these allegations, claiming that Lobeck was disciplined only because of his misconduct.

Lobeck also argues that the City violated Title VII by retaliating against him for filing a complaint with the EEOC. He alleges that after filing his EEOC complaint he requested several lateral transfers, which were denied by the new police chief, Jerry Poreba. The City claims that Chief Poreba denied the transfer requests because of plaintiff's poor behavior in the alleged cover-up, as well as in an earlier incident in which Lobeck was disciplined for dishonesty.

The City has now moved for summary judgment, arguing that Lobeck is bound by the purported settlement agreement and that he has failed to create a genuine issue of material fact as to whether the City disciplined him for racial reasons.

## II. *LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT*

Federal Rule of Civil Procedure 56(c) sets forth the standard governing summary judgment. In its most basic form, summary judgment is appropriate where there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the party opposing summary judgment may not simply rely on the pleadings or mere denials of the allegations. Rather, the opposing party must adduce some evidence showing that material facts are in issue. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. "Rule 56(c) therefore requires a non-moving party to go beyond the pleadings and by [its] own affidavits or by the depositions, answers to interrogatories, and admissions on file des-

ignate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *See also Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The Eleventh Circuit has restated the method for allocating burdens in a summary judgment motion. Specifically, in accordance with U.S. Supreme Court precedent,

> The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

*Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

### III. *DISCUSSION*

#### A. The Settlement Question

■ As an initial matter, the parties appear incorrectly to assume that Florida law controls the settlement question. In *Eatmon v. Bristol Steel & Iron Works, Inc.,* 769 F.2d 1503, 1516–17 (11th Cir.1985), the Eleventh Circuit explained that federal common law should be used to determine the scope and validity of settlement agreements in Title VII cases. *See also United States Anchor Mfg., Inc. v. Rule Indus., Inc.,* 7 F.3d 986, 993 n. 11 (11th Cir.1993) (Federal common law determines effect of settlement with respect to federal antitrust claims), *cert. denied,* 512 U.S. 1221, 114 S.Ct. 2710, 129 L.Ed.2d 837 (1994); *Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207, 1209 (5th Cir.1981) ("We conclude that federal law determines the validity of oral settlement agreements in employment discrimination actions brought pursuant to Title VII."). Thus, federal common law governs the various issues implicated by the City's argument that plaintiff is barred by a release from presenting his discrimination claims to the Court.

■ Before considering whether the purported settlement agreement bars plaintiff's claims, the Court must first determine whether there was in fact a settlement agreement. Plaintiff appears to argue that the record contains no settlement agreement for the Court to enforce. However, under the federal common law governing Title VII claims, "[a]bsent a factual basis rendering it invalid, an oral agreement to settle a Title VII claim is enforceable against a plaintiff who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute." *Fulgence,* 662 F.2d at 1209. Thus, the mere lack of a written release in this case does no foreclose the possibility that defendant can demonstrate the existence of a binding settlement agreement.

■ The lack of a written release does however make it much more difficult for the Court to conclude as a matter of law that the absence of any genuine issue of material fact requires a finding that plaintiff settled the claims at issue. The City would have the Court infer the existence of a settlement by piecing together the documentary record consisting of letters from Moses Baker to the City and to Lobeck, and of Lobeck's statement on his May 21 grievance form. While these documents may suggest the existence of an agreement, the Court hesitates to say that they conclusively establish it. Take, for instance, Baker's May 18 letter to the City Manager. In context, the statement that "Officer Lobeck has decided that he will not appeal this decision," could reasonably be interpreted to mean that as consideration for the City's waiver of its right to fire Lobeck, Lobeck waives his right to appeal the City's disciplinary decision. However, the letter says nothing overt about the existence of an agreement, and reading the letter one might also conclude that Lobeck simply decided not to bother with the hassle of an appeal. Thus, while the letter may be probative *evidence* of the existence of an agreement, it does not constitute the agreement itself.

Similarly, the City may wish to argue to the jury that its May 7 letter to Baker

evidences the parties' oral agreement. But again, the letter is not the agreement itself. For one, the letter states conclusively that certain disciplinary action will be taken. Its tone of finality undermines defendant's argument that the letter merely made an offer that Baker's May 18 letter accepted. Also, the Court has difficulty squaring the City Manager's statement that Lobeck may pursue an appeal with the City's argument that the consideration for the contract was his promise not to appeal. A jury, not the Court, must sort out this puzzle.

■ Finally, there is Lobeck's May 21 grievance form. Contrary to plaintiff's suggestion that Lobeck rejected both the pay cut *and* the demotion, the Court interprets the statement "[a]ll other items I do accept as my discipline" to mean that plaintiff accepted all items, including the demotion, other than the pay cut. The fact that he accepted the demotion, however, does not necessarily mean that he bargained for it. One may accept disciplinary action without contracting for it. Like the other record documents, the grievance form tends to show the existence of a settlement, but it does not conclusively establish it as a matter of law.[2]

■ The Court therefore concludes that at the present juncture a genuine issue of material fact precludes a finding that plaintiff settled his claims against the City. Additionally, even if the Court concluded as a matter of law that Lobeck settled his claims under the collective bargaining agreement, this would not necessarily mean that he had settled his claims under Title VII. Waivers of rights and remedies under Title VII must be closely scrutinized. *Puentes v. United Parcel Service, Inc.*, 86 F.3d 196, 198 (11th Cir. 1996). An agreement sufficient to waive common law rights may not suffice to waive Title VII rights. *See Beadle v. City of Tam-*

*pa*, 42 F.3d 633, 635 (11th Cir.) (listing factors court should employ in determining whether release was knowingly and voluntarily accepted), *cert. denied*, 515 U.S. 1152, 115 S.Ct. 2600, 132 L.Ed.2d 846 (1995). While the evidence that Lobeck did waive his Title VII rights appears to be strong, the Court cannot weigh the evidence on a motion for summary judgment.

## B. Evidence of Discrimination?

Even though the City cannot prevail on summary judgment by proving that this matter was settled, it might nonetheless be entitled to summary judgment if it could demonstrate that plaintiff has not adduced competent record evidence of discrimination. Lobeck advances two separate theories of racial discrimination. First, he argues that the City has a practice of tolerating the misconduct of black officers but not of white officers, and that this double standard led the City to seek harsher punishment for his alleged misconduct than it otherwise would have sought. Second, he argues that the City retaliated against him for filing charges of discrimination with the EEOC and the Florida Commission on Human Relations. The Court will consider each of these in turn.

### 1. Disparate Discipline

■ Title VII of the Civil Rights Act makes it "an unlawful employment practice for an employer [ ] to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. The Eleventh Circuit has

---

**2.** The City would also rely on Mr. Baker's deposition testimony that he reached an oral settlement with the City on behalf of his client. Lobeck disputes that he gave authority to Mr. Baker to agree to any such settlement. A client will only be bound by his lawyer's settlement negotiations where the lawyer acted pursuant to "clear and

unequivocal" authority from the client. *Vantage Broadcasting Co. v. WINT Radio, Inc.*, 476 So.2d 796, 797 (Fla. 1st DCA 1985) (citations omitted). The Court finds that a genuine issue of material fact precludes a finding that Mr. Baker acted with the clear and unequivocal authority of his client.

long recognized that there is no single method of establishing a prima facie case of discrimination. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1123 (11th Cir.1993) ("The elements of a prima facie case are flexible and should be tailored, on a case-by-case basis, to differing factual circumstances.") (citation omitted). Out of the various possible theories, plaintiff chooses the disparate discipline theory articulated in *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir.1984) (citations omitted):

> [A] plaintiff fired for misconduct makes out a prima facie case of discriminatory discharge if he shows that he is a member of a protected class, that he was fired, and "that the misconduct for which [he] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained."

For purposes of this motion, the City concedes that plaintiff is a member of a protected class. Additionally, although plaintiff was not discharged, there is no question that he was the subject of City disciplinary action. This leaves the third inquiry, whether plaintiff has created an issue of fact as to whether black officers engaged in nearly identical conduct for which they were not disciplined as severely as Lobeck.

Plaintiff devotes six pages of his responsive memorandum to detailing numerous unpunished transgressions by black officers. These include a threat of bodily harm from a black officer to a white sergeant, several beatings of persons in custody, the unjustified discharge of an officer's revolver while driving with his girlfriend, an officer's barricading himself in his home during a domestic disturbance, a black officer striking a white supervisor, and an instance of sexual and racial harassment by a black major against a white female employee. The City responds that none of these incidents is "nearly identical" to Lobeck's situation, because "[n]one of the examples Plaintiff cites (a) involve a Sergeant instructing junior police officers to lie about official business; (b) involved *two inci-*

*dents* in which a supervisory officer's veracity, ethics and integrity were called into question, or (c) involved a demotion because of such conduct." Defendant's Reply at 2. Citing *Nix* for the proposition that "there is no discrimination where differently situated people are treated differently," *id.,* the City argues that plaintiff has failed even to make out a *prima facie* case of discrimination.

If plaintiff were required to show incidents of misconduct by black sergeants fitting the pattern of the instant case as closely as the City insists, Lobeck would be unable to make out a *prima facie* case, and so would most other disparate discipline theory plaintiffs. The Supreme Court, however, has made clear that the comparable conduct need not be "nearly identical" in form, but only "nearly identical" in severity:

> Of course, precise equivalence in culpability between employees is not the ultimate question: as we indicated in *McDonnell Douglas,* an allegation that the 'other employees involved in acts against [the employer] of *comparable seriousness* ... were nevertheless retained ...' is adequate to plead an inferential case that the employer's reliance on his discharged employee's *misconduct as grounds for* terminating him was merely a pretext.

*Jones v. Gerwens,* 874 F.2d 1534, 1541 n. 12 (11th Cir.1989), *citing McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 283 n. 11, 96 S.Ct. 2574, 2580, 49 L.Ed.2d 493 (1976). Thus, Lobeck may withstand summary judgment by demonstrating that the City disciplined him for conduct of the same severity as the conduct of black officers, whom the City did not discipline (or disciplined less severely).

Do the unpunished incidents advanced by plaintiff rise to the level of severity of the misconduct at issue in this case? The Court finds this to be a close question. The Eleventh Circuit has ruled that stealing and insubordination are not comparable misconduct for purposes of establishing a *prima facie* case. *Hawkins v. Ceco Corp.,* 883 F.2d 977, 985 (11th Cir.1989), *cert. denied,* 495 U.S.

935, 110 S.Ct. 2180, 109 L.Ed.2d 508 (1990). In this case, however, plaintiff has pointed to a number of very serious-sounding incidents, including physical assaults on superiors and batteries on prisoners, which the Court is reluctant to say as a matter of law are less serious than a cover-up. Of course, trial may prove that these incidents were in fact very different from the incidents that led to Lobeck's demotion, but the Court is reluctant to usurp the function of the jury and determine these questions at this juncture.[3]

## 2. Retaliation

■ Title VII makes it illegal for an employer to retaliate against an employer "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). A plaintiff makes out a *prima facie* case of retaliation by establishing the following elements: "(1) that there was a statutorily protected participation, (2) that an adverse employment action occurred, and (3) that there was a causal link between the participation and the adverse employment action." *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.) (citation omitted), *cert. denied*, 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985).

■ Lobeck filed a charge of discrimination with the EEOC on December 12, 1994. The City subsequently denied his requests for lateral transfers. Thus, plaintiff has established the first two elements of the *prima facie* case. In order to survive summary judgment on the third element, the causal link, plaintiff must adduce evidence that the City was "discriminatorily motivated" when it denied him the lateral transfers. *Morgan v. City of Jasper*, 959 F.2d 1542, 1547 (11th Cir.1992). In proving this element, he may

rely on circumstantial evidence. *Id., citing Perryman v. Johnson*, 698 F.2d 1138 (11th Cir.1983).

■ By way of circumstantial evidence, Lobeck points to the fact that Officer Barber, one of the officers who received a lateral transfer instead of Lobeck, had been disciplined on previous occasions, and had lied during the course of an internal investigation. Plaintiff argues that the granting of a transfer to an officer who had lied during an investigation calls into serious question Chief Poreba's explanation for the denial of Lobeck's transfer requests—that Lobeck lacked "veracity." The Court finds that this allegation suffices both to demonstrate discriminatory intent, as required for the *prima facie* case, and to support plaintiff's theory that the City's explanation of the refusals to transfer were pretextual.

### CONCLUSION

The Court has considered the motion, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that defendant's Motion for Summary Judgment [DE 56] be, and the same is hereby **DENIED.**

---

**3.** Having established a prima facie case of disparate discipline, plaintiff need not demonstrate further evidence of pretext. *See Jones v. Gerwens*, 874 F.2d 1534, 1541 n. 12 (11th Cir.1989)

(citing *McDonald v. Santa Fe* for proposition that evidence of disparate discipline is sufficient to establish pretext).