**Hillel HELLINGER, Plaintiff,**

v.

**ECKERD CORPORATION, Defendant.**

**No. 98–0075–CIV.**

United States District Court,
S.D. Florida.

Sept. 28, 1999.

Norman E. Wedderburn, North Miami Beach, FL, for plaintiff.

Susan L. Dolin, Hollywood, FL, for defendant.

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MORENO, District Judge.

The Plaintiff, Hillel Hellinger, is suing the Defendant, Eckerd Corporation, for religious discrimination under Title VII for failing to hire him because he refused to sell condoms due to his religious beliefs. The Defendant argues that the Plaintiff cannot establish a *prima facie* case of religious discrimination because the Plaintiff did not inform the Defendant of his religious restriction or his need for accommodation. Moreover, the Defendant argues that it cannot reasonably accommodate the Plaintiff without suffering undue hardship. The Court finds that the Plaintiff sets forth a *prima facie* case of religious discrimination because Eckerd had actual knowledge of the Plaintiff's religious beliefs and decided not to pursue the Plaintiff's employment application based on that information. Furthermore, the Court finds that Eckerd has not met its burden of proving that there was no way to accommodate the Plaintiff without undue hardship. Therefore, the Defendant's motion for summary judgment is denied.

### LEGAL STANDARD

Summary judgment is authorized when there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must present

more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## BACKGROUND

In July of 1995, the Plaintiff, who is an Orthodox Jew, applied for a part-time position with Eckerd as a pharmacist. Eckerd owns and operates a chain of full service drug stores which sell prescription items, over-the-counter health related items, and general retail merchandise. The Plaintiff turned his employment application in to Scott Mazza, the then District Pharmacy Manger in the North Miami Area. When Plaintiff dropped off his application with Mazza, he was wearing a full beard, peyos (side curls), tzizuits (fringes under his shirt), and a yarmulke. Mazza only recalls that the Plaintiff had a beard and wore a dress shirt, but no tie. Mazza states that he did not make any assumptions regarding the Plaintiff's religion at the time. Although Plaintiff cannot sell condoms due to his religious beliefs, he did not list any religious restrictions on his application or make any request for an accommodation. Nor did he inform Mazza about his religious beliefs or restrictions at the time he dropped off his application.

In following up on the Plaintiff's application, Mazza contacted Ken Wisniewski, one of the Plaintiff's references. Wisniewski had been the Plaintiff's supervisor at Rite–Aid, but had since left Rite–Aid and was working for Eckerd as a pharmacist. Wisniewski informed Mazza that the Plaintiff refused to sell condoms due to his religious beliefs and that he had refused to modify prescription prices.[1] Based on his conversation with Wisniewski, Mazza decided not to pursue the Plaintiff's application for employment.

A brief description of Eckerd's pharmacy department is pertinent to the case. The pharmacy department in each Eckerd store is generally located in the rear of the store. The pharmacists are primarily responsible for filling and selling prescription items, but may also be called upon to sell over-the-counter health items and all other retail merchandise sold in the store. The pharmacy department has its own cash registers, and customers may purchase items at the pharmacy counter rather than going to the front of the store. It is against Eckerd policy to request that a customer take items from the pharmacy counter to the registers at the front of the store unless the pharmacy department is so busy that it would be for the customer's convenience to do so. Even then, the customer may choose not to go to another register.

Eckerd staffs its pharmacy department with one pharmacist per shift at each store. Depending on the prescription volume of the particular store, there may be an overlap of one to two hours between shifts when more than one pharmacist may be working. Eckerd also employs drug clerks and pharmacy technicians to help staff the pharmacy department at some stores. The drug clerk and pharmacy technician's primary duty is to ring up sales; however, they also take telephone calls, deal with insurance companies, and assist customers. Even in some stores that employ drug clerks and pharmacy technicians, there are times when the pharmacist may work alone.

## LEGAL ANALYSIS

Title VII prohibits an employer from refusing to hire an individual on the basis

---

1. At his deposition, Mazza stated that Wisniewski informed him that the Plaintiff refused to sell "birth control devices." However, Mazza's handwritten notes from his conversation with Wisniewski state that the Plaintiff "refuses to sell condoms." The apparent factual dispute is not material for purposes of considering the Defendant's mo-

tion for summary judgment because in either case it appears that Mazza's decision not to pursue the Plaintiff's employment application turned on the Plaintiff's religious restrictions. Moreover, defense counsel stated at oral argument that the parties agree that at the very least, Wisniewski told Mazza that the Plaintiff could not sell condoms.

of that person's "race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1) (1994). The term "religion" is defined in the statute to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate ... employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j) (1994). In other words, Title VII requires that an employer "make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *Lake v. B.F. Goodrich Co.*, 837 F.2d 449, 450 (11th Cir.) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977)), *cert. denied*, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988).

■ Employees may utilize two theories in asserting religious discrimination claims: disparate treatment and failure to accommodate. *See Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017–18 (4th Cir.1996), *cert. denied*, 522 U.S. 813, 118 S.Ct. 58, 139 L.Ed.2d 21 (1997). The disparate treatment theory mirrors the burden-shifting analysis set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Chalmers*, 101 F.3d at 1017–18. In a religious accommodation case, an employee can establish a claim even though he cannot show that other employees were treated more favorably or cannot rebut an employer's legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 1018. "This is because an employer must, to an extent, actively attempt to accommodate an employee's religious expression or conduct even if, absent the religious motivation, the employee's conduct would supply a legitimate ground for discharge." *Id.*

The Plaintiff, who is proceeding under the accommodation theory, correctly argues that the Defendant's articulated legitimate, non-discriminatory reason for not hiring the Plaintiff—his refusal to sell birth control—does not end the Court's analysis. Rather, whether or not Eckerd's decision not to hire the Plaintiff was supported by legitimate concerns for its business goes to the issue of undue hardship. *See EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir.1997).[2]

**A. The *Prima Facie* Case**

■ In order to establish a *prima facie* case of religious discrimination under the "failure to accommodate 'theory,' the plaintiff must prove: 1) that the Plaintiff had a *bona fide* religious belief that conflicted with an employment requirement; 2) that he informed his employer about the conflict; and 3) that he was discharged or not hired for failing to comply with the conflicting employment requirement." *See Beadle v. Hillsborough County Sheriff's Dept.*, 29 F.3d 589, 592 n. 5 (11th Cir.1994) (citing *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 144 (5th Cir.1982)), *cert. denied*, 514 U.S. 1128, 115 S.Ct. 2001, 131 L.Ed.2d 1002 (1995); *see also Chalmers*, 101 F.3d at 1019; *Toledo v. Nobel–Sysco Inc.*, 892 F.2d 1481, 1486 (10th Cir.1989), *cert. denied*, 495 U.S. 948, 110 S.Ct. 2208, 109 L.Ed.2d 535 (1990).

The Plaintiff satisfies the first and third elements of the *prima facie* case. The Plaintiff alleges that his religious beliefs as an Orthodox Jew prevent him from selling condoms. The Defendant does not contest the sincerity of the Plaintiff's beliefs. This belief conflicts with Eckerd's requirement that a pharmacist may at times have to sell condoms. Moreover, Mazza, the District Pharmacy Manager, admits that he decided not to pursue the Plaintiff's employment application after learning that the

---

**2.** The same reasoning applies to the Defendant's related argument that the Plaintiff is not qualified for the position as a pharmacist because he refuses to sell condoms. The accommodation theory questions whether the employer can reasonably accommodate the Plaintiff without undue hardship so that his religious beliefs will not disqualify him from employment.

Plaintiff refused to sell condoms based on his religious beliefs.

■ However, the Defendant argues that the Plaintiff fails to make a *prima facie* case of religious discrimination because the Plaintiff never informed Mazza of his religious beliefs or restrictions and did not ask to be accommodated. *See Chalmers,* 101 F.3d at 1019 (stating that a *prima facie* case under the accommodation theory requires evidence that the plaintiff informed the employer that his religious needs conflicted with an employment requirement and asked the employer to accommodate his religious needs) (citing *Redmond v. GAF Corp.,* 574 F.2d 897, 901 (7th Cir.1978)).

In *Chalmers,* the Plaintiff conceded that she did not expressly notify her employer that her religion required her to write letters warning others that God was displeased with their behavior or request an accommodation. *Id.* at 1019–20. However, she argued that the notoriety of her religious beliefs within the company put the Defendant on notice of her need to send the letters. *Id.* at 1019–20. The Fourth Circuit rejected this argument, stating that, "knowledge that an employee has strong religious beliefs does not place an employer on notice that she might engage in any religious activity, no matter how unusual." *Id.* at 1020. However, the Court added in a footnote, "[w]e emphasize that we do not hold, ..., that an employer's knowledge of an employee's sincere religious beliefs can never put an employer on notice of the possibility of some religious conduct by an employee at work, e.g. display of ashes on Ash Wednesday or wearing a yarmulke, etc. We simply hold that in this case the knowledge that Tulon had of Chalmers' religious beliefs did not put it on notice that she would write, and send, personal accusatory letter to co-workers at their homes." *Id.* at 1020 n. 3.

The Plaintiff counters that Mazza had actual knowledge of the Plaintiff's religious beliefs and his inability to sell condoms because Wisniewski, the Plaintiff's former supervisor at Rite–Aid, informed Mazza

that the Plaintiff had previously refused to sell condoms for religious reasons. Moreover, Mazza testified that he decided not to pursue Plaintiff's application for employment based on the information he learned from Wisniewski.

Because the Defendant had specific knowledge of the Plaintiff's religious restrictions, the case at hand is more comparable to *Brown v. Polk County,* 61 F.3d 650, 654 (8th Cir.1995) (*reh'g en banc*), *cert. denied,* 516 U.S. 1158, 116 S.Ct. 1042, 134 L.Ed.2d 189 (1996), than to *Chalmers.* In *Brown,* the Eighth Circuit rejected the Defendant's argument that because the Plaintiff never explicitly asked for accommodation for religious activity, he could not claim the protections of the Title VII. *Id.* at 654. The Court stated that the Defendant requires "only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Id.* The Court in *Brown* found that the employer had notice of the Plaintiff's conflict with an employment requirement because the Plaintiff had engaged in similar religious conduct on prior occasions and had been reprimanded. *Id.* at 654.

The Court finds that while the employer must have knowledge of the plaintiff's religious restrictions, the issue of whether the Plaintiff informed Eckerd of his religious restrictions is moot because it is clear from Mazza's handwritten notes and deposition testimony that he was aware that the Plaintiff refused to sell condoms for religious reasons. The facts also support the finding that Mazza decided not to pursue the Plaintiff's employment application based on this information.

It would be hyper-technical, based on the facts of this case, to require notice of the Plaintiff's religious beliefs to come only from the Plaintiff. The notice requirement is meant in part to allow the company an opportunity to attempt to reasonably accommodate the Plaintiff's beliefs. The

Defendant was not deprived of the opportunity to attempt to accommodate the Plaintiff's beliefs merely because the notice did not come from the Plaintiff. However, the Court does not place the burden of inquiry on the employer and this decision should not be interpreted to create such a duty.

**B. Burden Shifts to Employer to Show Reasonable Accommodation or No Way to Accommodate without Undue Hardship**

■ Once the Plaintiff establishes a *prima facie* case of religious discrimination, the burden shifts to the Defendant to show that it was unable to reasonably accommodate the Plaintiff's needs without undue hardship. *See Smith v. Pyro Mining Co.,* 827 F.2d 1081, 1085 (6th Cir.1987), *cert. denied,* 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988); *Brener,* 671 F.2d at 144 (explaining that the statutory burden to accommodate rests with the employer); *see also Beadle,* 29 F.3d at 593 (recognizing that it is an employer's duty to reasonably accommodate the religious practices of its employee); *Anderson v. General Dynamics Convair Aerospace Div.,* 589 F.2d 397, 401 (9th Cir.1978) (stating that the burden is on the employer, not the employee, to undertake initial steps toward accommodation), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979).

The employer may meet this burden either by making a reasonable accommodation or by showing that any accommodation would result in undue hardship. *See Ilona of Hungary, Inc.,* 108 F.3d at 1576; *Toledo,* 892 F.2d at 1486–87 (holding that an employer who has made no efforts to accommodate the religious beliefs of an employee or applicant before taking action against him may only prevail if it shows that no accommodation could have been made without undue hardship). Moreover, because "reasonable accommodation" and "undue hardship" are not defined under Title VII, each case turns on its own facts and "in a sense every case boils down to a determination as to whether the employer acted reasonably." *Beadle v. City of Tam-*

*pa,* 42 F.3d 633, 636 (11th Cir.), *cert. denied,* 515 U.S. 1152, 115 S.Ct. 2600, 132 L.Ed.2d 846 (1995).

In the case at hand, the Defendant made no attempt to accommodate the Plaintiff and argues that it would not have been able to accommodate the Plaintiff without undue hardship. In *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), the Supreme Court considered the degree of accommodation that is required of an employer under Title VII. The Court defined "undue hardship" as any act that would require an employer to bear greater than a "de minimis cost" in accommodating an employee's religious beliefs. *Id.* at 84, 97 S.Ct. 2264, *cited in Beadle,* 42 F.3d at 636. "De minimis cost" entails not only monetary concerns, but also the employer's burden in conducting its business, *id.* at 636, and unequal treatment of other employees, *Hardison,* 432 U.S. at 84, 97 S.Ct. 2264.

■ Because the Defendant claims it cannot reasonably accommodate the Plaintiff without undue hardship, the Court's analysis must focus on whether Eckerd has shown that it would have endured a greater than de minimis cost in attempting to accommodate the Plaintiff. *See Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 68–69, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986), *cited in Beadle,* 42 F.3d at 637. The Defendant argues that the only way to accommodate the Plaintiff's religious practice of refusing to sell condoms would be for Eckerd to: 1) hire an additional pharmacist to work side-by-side with the Plaintiff during his shift; 2) allow the Plaintiff to refuse to sell the condoms; or 3) request that the customers take their condom purchase to another register. According to the Defendant, all three of these options impose more than de minimis costs on the Defendant because they cut into Eckerd's profits and/or violate Eckerd's customer service policy.

Case law supports the Defendant's argument that having to hire an additional employee in the pharmacy department to

work alongside the Plaintiff to ensure that the Plaintiff would never have to sell condoms is more than a de minimis cost. *See Brener*, 671 F.2d at 146 (stating that the hiring of another pharmacist 'would plainly involve more than a de minimis cost'); *Lee v. ABF Freight Sys., Inc.*, 22 F.3d 1019, 1023 (10th Cir.1994) (stating that the cost of hiring an additional worker is more than a de minimis cost).

As for the other two options suggested by the Defendant, it argues that if it allows the Plaintiff to refuse to sell condoms or to ask that the customer to go to another register, Eckerd could potentially lose customers, community goodwill, and revenue. Eckerd stresses that it is against Eckerd's customer service policy to send a customer to another register unless a particular register is extremely busy. According to the Defendant, situations arise in which the pharmacist must ring up a customer's purchases at the pharmacy's cash register. This situation arises, for example, when a pharmacist is working alone in the pharmacy department and a customer asks to pay for items, including general retail merchandise, at the pharmacy's cash register rather than going to the front of the store. The likelihood of a pharmacist working alone depends on the prescription volume done by the particular store, as well as other factors, such as the day of the week and the time of day.

According to the Defendant, condom sales for the six representative Miami area stores in the fiscal years 1996 through 1998 and the first eight weeks of 1999 total $37,726.65. Eckerd argues that this amount is hardly de minimis. Eckerd also argues that if it allowed the Plaintiff to refuse to sell condoms or to send the customer to another register, it would in effect be allowing the Plaintiff to impose his religious beliefs not only on Eckerd, but on Eckerd's customers, as well.

The Plaintiff counters that the Defendant's hardships are speculative at best given that Eckerd has never before had a pharmacist who refused to sell certain over-the-counter products and never attempted to accommodate the Plaintiff. While an employer may establish undue hardship without actually putting an accommodation into effect, it must "present evidence of undue hardship; it cannot rely merely on speculation." *Smith*, 827 F.2d at 1086. As the Defendant admits, the sale of condoms is "unpredictable" and customer requests regarding the pharmacist's participation in such sales are equally unpredictable. *See Def.'s Mot. for Summ. J.*, at 18.

Several circuits have required the employer to prove more than hypothetical hardship. For example, the Sixth Circuit stated, "[w]e are somewhat skeptical of hypothetical hardships that an employer thinks might be caused by an accommodation that has never been put into practice. The employer is on stronger ground when he has attempted various methods of accommodation and can point to hardships that actually resulted." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975); *see also Toledo*, 892 F.2d at 1490, 1492 (finding Defendant's argument that it would incur increased risk of tort liability for hiring a driver who uses peyote in religious ceremonies too speculative); *Brown*, 61 F.3d at 655 (finding that the defendants' examples of the burden they would have to bear due to the Plaintiff's spontaneous prayers and isolated references to Christian belief were insufficiently real and too hypothetical to satisfy the standard required to show undue hardship); *Burns v. Southern Pac. Transp. Co.*, 589 F.2d 403, 406–07 (9th Cir.1978) (finding the defendant's unofficial and unscientific polls regarding employee dissatisfaction with persons who received different treatment speculative), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979); *Anderson*, 589 F.2d at 402 (stating that undue hardship requires more than proof of co-worker's unhappiness with a particular accommodation; the defendant must show an actual imposition on co-workers or disruption of the work routine).

Aside from its argument that the Defendant's proof of undue hardship is speculative, the Plaintiff urges the Court to reject the Defendant's argument that there are only three possible ways to accommodate the Plaintiff's religious restrictions. According to the Plaintiff, there are several other ways in which Eckerd could have reasonably accommodated him without suffering undue hardship. The Plaintiff suggests that the Defendant could have scheduled the Plaintiff to work during hours in which a drug clerk or pharmacy technician was also on duty. Another option the Plaintiff offers is that Eckerd could have placed the Plaintiff in a medium to high sales volume store where a drug clerk or pharmacy technician is always on duty. Plaintiff also suggests that the Defendant could have allowed the Defendant to work out his schedule with other pharmacists in order to avoid a scenario in which the Plaintiff would be the only employee working in the pharmacy department. The Plaintiff provides deposition evidence from a number of Eckerd pharmacists supporting the argument that the pharmacists often work out their shifts amongst themselves and are able to trade off hours if necessary.

Generally, compliance with Title VII does not require an employer to give an employee a choice among several accommodations; nor is the employer required to demonstrate that alternative accommodations proposed by the employee constitute undue hardship. *See Beadle,* 29 F.3d at 592 (citing *Ansonia Bd. of Educ.,* 479 U.S. at 68, 107 S.Ct. 367). However, in this Case, the Defendant offered the Plaintiff no accommodation and has failed to provide the Court with any evidence of actual undue hardship. Rather, the Defendant speculates that a situation may arise in which the Plaintiff will be the only employee working in the pharmacy department and a customer will want to purchase condoms at the pharmacy register. The Defendant goes on to speculate that if the Plaintiff refuses to do so or asks the customer to use a different register, Eckerd will lose customers and revenue. The Defendant has failed to meet its burden of proving that no accommodation could have been made without incurring undue hardship. Because a reasonable trier of fact could find that Eckerd could have accommodated the Plaintiff without undue hardship, the Defendant is not entitled to judgment as a matter of law.

### CONCLUSION

Therefore, it is

ADJUDGED that Defendant's motion for summary judgment *(D.E. No. 51)* is DENIED. It appears from a careful review of the motions, filings and attachments that genuine issues of material fact remain in dispute. Hence, the moving party is not entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

DONE AND ORDERED.