FLOYD, Circuit Judge,
dissenting:
This appeal presents a straightforward question regarding the. scope of the parties’ release. In the governing agreement, Bala agreed “to waive any rights accorded to him pursuant to the hearing officer’s decision of February 1, 2011.” J.A. 47. It is undisputed that the only “right” awarded to Bala in the February 2011 decision was reinstatement to his former position at the DCR. And the hearing officer granted Bala this right only because the DCR failed to follow its own internal layoff poli *641 cies; the officer did not address Bala’s additional claims under Title VII.
Yet, the majority concludes that the release also precludes Bala from pursuing his Title VII retaliation claim in federal court. This result would be correct if the release stated that Bala agreed to waive “any and all claims related to his employment” with the DCR. But that is not what the Agreement — drafted by the DCR— says. By holding otherwise, the majority transforms the narrow, specific release at issue into a general release broadly precluding all claims brought in the October 2009 grievance. The parties were certainly free to negotiate and agree to such a release. But nothing in the plain language of the Agreement suggests they actually did so here. Accordingly, I respectfully dissent.
I.
It is well-settled that an employee may release a cause of action under Title VII if the employee’s consent to settlement is “voluntary and knowing.” Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). But circuits diverge on what an assessment of voluntariness and knowledge entails: some look solely to principles of contract interpretation, while others evaluate the totality of the circumstances surrounding a purported release. See Pierce v. Atchison, Topeka & Santa Fe Ry. Co., 65 F.3d 562, 570 (7th Cir.1995) (collecting cases). Under either approach, however, the clarity of a purported waiver’s language is significant. Compare O’Shea v. Commercial Credit Corp., 930 F.2d 358, 362 (4th Cir.1991) (considering this split and determining that the “better approach is to analyze waivers of ADEA claims under ordinary contract principles”), superseded by statute, 29 U.S.C. § 626(f), with Beadle v. City of Tampa, 42 F.3d 633, 635 (11th Cir.1995) (listing factors relevant in assessing the totality of the circumstances, including “the clarity of the agreement”). And although the Fourth Circuit lacks binding precedent on which approach governs releases of Title VII claims, see Randolph v. Caruso Homes, Inc., No. RWT-13-2069, 2014 WL 4661985, at *4 n. 6 (D.Md. Sept. 16, 2014), we need not decide that issue, as the Agreement’s plain language compels one result under either approach.
Here, the plain language of the Agreement unambiguously demonstrates that the parties agreed only to a limited release that did not include Bala’s Title VII claim. Although we must derive the parties’ intent from the instrument viewed as a whole, Atalla v. Abdul-Baki, 976 F.2d 189, 193 (4th Cir.1992), Section 4 of the Agreement is the only section that defines the scope of the release. That section limits Bala’s release to “any rights accorded to [Bala] pursuant to the hearing officer’s decision of February 1, 2011, including his reinstatement to his former salaried position.” * J.A. 47. Significantly, the only right accorded to Bala pursuant to the *642 February 1 decision was the “specific remedy,” Maj. Op. at 640, of reinstatement to his former (or a similar) position. And that right was based only on his having proved his claim that the DCR “did not comply with the terms and conditions of the Commonwealth of Virginia Layoff Policy and Procedure Number 1.30.” J.A. 378-74. Thus, I believe the release clearly applies only to Bala’s right to reinstatement for the violation of administrative policy, and I would reverse the district court’s grant of summary judgment.
II.
Rather than conduct a straightforward analysis, the majority contorts the Agreement and errs in four main respects.
First, the majority erroneously declares that “Bala explicitly waived any rights related to or flowing from” the hearing officer’s February 1 decision. Maj. Op. at 640. I agree that Bala waived his limited right to reinstatement — flowing from or “accorded” by that decision — but I cannot find where the Agreement explicitly says that he also waived any rights “related to” the decision. If such language existed, perhaps we could interpret the waiver provision to capture the Title VTI claims as “related” (albeit distantly) to the final decision. See Related Definition, Merriam-Webster Dictionary, www.merriam-webster.com/dictionary/related (defining “related” as “connected by reason of an established or discoverable relation”). But in actuality, such language is wholly absent, and the majority errs by reading it into the Agreement.
Second, the majority relies on Section 5 of the Agreement, which the majority says incorporates by reference Bala’s October 2009 grievance and the February 1 decision. According to the majority, merely incorporating these documents by reference somehow expands the scope of the release to include all claims at issue in the October 2009 grievance. I disagree. Unlike Section 4, Section 5 does not define the scope of the waiver. Indeed, it says nothing about waiver at all. Rather, it states that the Agreement only applies to the grievance and the resulting final decision; not that the “waiver” itself applies to all claims raised in the grievance or adjudicated prior to the February 1 decision. In reading Section 5 as it does, the majority simply conflates Section 5 with the actual waiver language in Section 4.
Third, the majority relies on the Agreement’s recitals, which describe the procedural posture of Bala’s grievance and state that the Agreement’s purpose was to “resolve this situation.” J.A. 46. The majority concludes that the amorphous reference to a “situation” must mean all of Bala’s claims, and thus expands the limited release into a general waiver. Again, I do not believe this is correct. As an initial matter, I do not read “situation” to unambiguously refer to all of Bala’s claims, as the majority does. Rather, it may just as easily refer to Bala’s right to reinstatement based on the favorable February 1 decision. Thus, at best for the DCR’s case, the recitals create an ambiguity' about the scope of Bala’s release. But even if there is an ambiguity, based on the inclusion of a vague general expression of intent, “no rational court could say that a general expression of intent trumps the specific terms that it introduces.” Kenneth A. Adams, A Manual of Style for Contract Drafting 32 (3d ed.2013); see also United Va. Bank/Nat’l v. Best, 223 Va. 112, 115, 286 S.E.2d 221 (1982) (“Under settled rules of construction, if the prefatory or recital language conflicts with *643 the obligatory provisions of the contract, then the obligatory provisions must prevail.”)- And even if the recitals somehow suffice to create an ambiguity in the Agreement, we should construe it (at least for the purposes of the DCR’s summary-judgment motion) against the drafter, the DCR. Sys. Research & Applications Corp. v. Rohde & Schwarz Fed. Sys., Inc., 840 F.Supp.2d 935, 945 (E.D.Va.2012) (citing Martin & Martin, Inc. v. Bradley Enters., Inc., 256 Va. 288, 291, 504 S.E.2d 849 (1998)).
Finally, validating such vagueness as sufficient to constitute waiver poses a real threat to employees’ ability to pursue their rights under Title VII. Essentially, the majority equates the mere existence of a waiver provision to a full, exhaustive release of an employee’s right to bring any pending claims. If the Agreement at issue suffices for such a release, I am hard pressed to imagine what the majority would find inadequate. Indeed, as the majority opinion hypothesizes, the burden is now on employees to insist on language reserving any such rights, Maj. Op. at 638-40, even where an agreement does not reference Title VII claims and even where a waiver provision is otherwise narrow. In placing such a burden on employees, the majority simply disregards the basic tenet that “[wjaivers of federal remedial rights ... are not lightly to be inferred.” Torrez v. Pub. Serv. Co. of N.M., Inc., 908 F.2d 687, 689 (10th Cir.1990) (per curiam) (citing Watkins v. Scott Paper Co., 530 F.2d 1159, 1172 (5th Cir.1976)); see also Pierce v. Atchison Topeka & Santa Fe Ry. Co., 110 F.3d 431, 438 (7th Cir.1997); Lyght v. Ford Motor Co., 643 F.2d 435, 441 (6th Cir.1981).
For these reasons, I respectfully dissent.

 This language stands in stark contrast to the broad language typically used in general releases of Title VII claims. See, e.g., Smith v. Amedisys Inc., 298 F.3d 434, 441-42 (5th Cir.2002) (finding Title VII claims clearly waived by an employee’s agreement “to release [the employer] of any and all employment related claims”); Stroman v. W. Coast Grocery Co., 884 F.2d 458, 460-61 (9th Cir.1989) (finding clear waiver of Title VII claims based on a provision stating that the agreement’s "terms represent a full and final settlement of any and all claims arising out of [the employee’s] employment with [his employer]”); Pilon v. Univ. of Minn., 710 F.2d 466, 467-68 (8th Cir.1983) (finding clear waiver of a Title VII claim in a provision in which a graduate student released the university "from any and all manner of action ... which [the plaintiff] ever had”); Anderson v. Garbage Disposal Serv., No. 3:00CV294-MU, 2000 WL 33912330, at *1 (W.D.N.C. Dec. 18, 2000) *642 (finding clear waiver of a Tide VII claim in a provision in which the plaintiff “released and forever discharged [the employer] of and from any and all actions related to Plaintiff's employment” (brackets omitted)).