**POTOCNIK, Appellant and Cross–Appellee,**

**v.**

**SIFCO INDUSTRIES, INC., Appellee and Cross–Appellant.\***

[Cite as *Potocnik v. Sifco Industries, Inc.* (1995), 103 Ohio App.3d 560.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 66668.

Decided May 22, 1995.

---

\* Reporter's Note: A discretionary appeal in the Supreme Court of Ohio was not allowed in (1995), 73 Ohio St.3d 1453, 654 N.E.2d 988.

562

*Gaines & Stern Co., L.P.A., David Roloff* and *Wally Mueller,* for appellant and cross-appellee.

*Squire, Sanders & Dempsey, Jeffrey J. Wedel* and *Anne C. Morgan,* for appellee and cross-appellant.

NAHRA, Judge.

Appellant and cross-appellee, Valentine Potocnik, is appealing the trial court's order granting appellee and cross-appellant, Sifco Industries, Inc., its motion for a new trial. Appellee filed a cross-appeal asserting additional reasons why its motion for a new trial should have been granted. Sifco also contends the trial court should have granted its motion for a directed verdict, and should have dismissed for lack of subject matter jurisdiction. For the following reasons, we affirm in part and reverse in part, and remand.

Appellant sued his employer, Sifco Industries, for handicap discrimination and fraud. Appellant worked as a laborer in the saw department at Sifco Industries. In October 1989, a meeting was held between appellant, Lucille Ovark (the personnel manager) and John Snyder (the manufacturing manager). It was

disputed whether the meeting was called because appellant had made threats to other employees, or because appellant had been complaining about health problems. Snyder and Ovark suggested that appellant go on sick leave, until he could obtain a doctor's release with no work restrictions. The collective bargaining agreement provided for one year of sick leave with some pay and benefits.

Appellant initially saw Dr. Medidas. A letter from Dr. Medidas was allowed in evidence. The letter stated that Medidas suggested that appellant should be admitted to the hospital for control of his blood pressure and a psychiatric evaluation.

Appellant was eventually referred to a psychiatrist, Dr. Schwartz. Dr. Schwartz diagnosed appellant as having an anxiety disorder with panic attacks. The diagnosis was based in part on physical symptoms, such as dizziness. The doctor submitted forms stating that appellant was unable to work, so appellant could obtain the sick leave benefits. This conclusion was based on appellant's statement to Dr. Schwartz that he could not cope with his job. The doctor also opined that, in general, anxiety disorders may result in inability to work. In September 1990, appellant expressed a desire to return to work, and Dr. Schwartz released him without restrictions.

Appellant testified that in September 1990, he asked his supervisor, Ivan Popa, about the procedure for returning to work. Popa said to just contact him or Lucille Ovark before the end of the year. Popa testified that no such conversation took place. Ovark sent appellant a letter on September 28, stating that the company had a right to require appellant to see a doctor selected by the company before appellant returned to work.

The doctor selected by the company was Dr. Fagan. She recommended that appellant be released for work, with certain restrictions. For the first month, appellant could not work any overtime and could not be switched to different tasks during the course of the day. Dr. Fagan also testified it was possible that someone with an anxiety disorder or hypertension could not work for a period of years. Dr. Schwartz agreed with Dr. Fagan's work restrictions.

Ovark told appellant that light duty was available only to workers injured on the job. Sifco could not make the accommodations recommended by Dr. Fagan. Ovark suggested that appellant take an additional year of leave, without pay and benefits. The collective bargaining agreement provided for such leave without loss of job or seniority.

Over the next year, appellant did not see any doctors because he had no insurance. In the summer of 1991, appellant felt he was ready to return to work. He contacted Ivan Popa about returning to work, and Popa allegedly told him,

"you have plenty of time." Appellant testified that Sifco never told him that he could return to work before the one-year period expired.

In October appellant contacted Ovark, who told him to obtain a work release. On October 10, two days before the leave was scheduled to expire, appellant reported to Ovark with a work release from Dr. Tandon. Ovark said the release was unacceptable because appellant had never been treated by Dr. Tandon. Appellant obtained a work release without restriction from Dr. Schwartz. Ovark found this release unacceptable as well, because Dr. Schwartz had not treated appellant over the year. She attempted to schedule an appointment with a company doctor, but no appointment was available for three weeks. Appellant testified that Ovark said to him, "How do I know that you are not going to get sick again or that you are not going to blow up?" Ovark denied making this statement. Ovark terminated appellant.

Evidence was presented that another employee, Donald Vunjak, was allowed to see a company doctor after his leave expired. The company had approved a work release submitted by Vunjak's doctor already. Vunjak's leave expired during a plant shutdown.

The jury found for appellant on both the handicap discrimination and the fraud claim. They awarded back pay of $81,432, front pay of $133,000 and punitive damages of $150,000.

The case had been originally assigned to Judge Ralph A. McAllister, who granted Sifco's motion *in limine* to exclude the medical reports of Drs. Medidas, Fagan and Tandon. None of these doctors were named as witnesses in the response to appellee's interrogatories. The case was assigned to visiting Judge Thomas Matia for trial.

Judge Matia suspended the trial for one afternoon so the parties could take the deposition of Dr. Fagan. This deposition was read into evidence. The medical records of Dr. Fagan and the above-mentioned letter of Dr. Medidas were admitted into evidence. No records of Dr. Tandon were admitted.

Judge Matia refused to submit to the jury any of the interrogatories requested by appellee. No discussion concerning the interrogatories appeared in the transcript. Appellant submitted an App.R. 9(C) statement signed by Judge Matia, stating that Judge Matia felt the interrogatories were inconsistent with the jury instructions, incomplete, confusing, ambiguous or cumulative. When Judge Matia signed the App.R. 9(C) statement, the case had been transferred back to Judge McAllister to rule on post-trial motions.

Judge McAllister granted appellee's motion for a new trial because Judge Matia refused to submit the interrogatories to the jury, and erroneously allowed into evidence the deposition of Dr. Fagan and the medical reports of Drs. Fagan

and Medidas. When Judge McAllister ruled on the motion for a new trial, he did not have a copy of the trial transcript.

## I

Appellant's first assignment of error states:

"The judge reassigned to this case after trial, who did not have the trial transcript, erred in granting Sifco's motion for new trial."

We find that it was error for Judge McAllister, who did not preside at the trial, to rule on the motion for a new trial without a transcript. A movant for a new trial has the duty to present the evidence necessary to support a motion for a new trial. See *Whiston v. Bio-Lab, Inc.* (1993), 85 Ohio App.3d 300, 308, 619 N.E.2d 1047, 1051. Here, the judge did not have the proper evidence before him to determine whether it was error to refuse to submit interrogatories to the jury and in allowing certain evidence. Appellee's motion for a new trial should have been denied because appellee failed to present the necessary evidence.

Accordingly, this assignment of error is sustained.

## II

Appellant's second assignment of error states:

"In the alternative, the reassignment of the case, after a jury verdict had been entered in plaintiff's favor, from the trial judge to another judge 'to rule on post trial motions' did not comply with Ohio Civil Rule 63(B)."

The journal entry reassigning a case must set out a justifiable reason for the transfer. *Berger v. Berger* (1981), 3 Ohio App.3d 125, 3 OBR 141, 443 N.E.2d 1375. Absent such a journal entry, the reassigned judge had no authority, and actions of the reassigned judge are voidable. *Id.* The journal entry here stated that Judge Matia was "unavailable." The journal entry was insufficient, because it simply stated a conclusion and did not provide a justifiable reason. *Mlinarcik v. E.E. Wehrung Parking, Inc.* (1993), 86 Ohio App.3d 134, 620 N.E.2d 181. Appellant timely objected to the transfer, so the ruling by Judge McAllister on the new trial motion was void.

Additionally, under the facts of this case, reassignment was not appropriate. Judge Matia was absent from the court, but he was scheduled to hear another case one week after Judge McAllister ruled on the motion for a new trial. Reassignment is only appropriate when the assigned judge has a long-term absence, or has a short term absence and there is an immediate need for action in the case. *Berger, supra,* 3 Ohio App.3d at 130, 3 OBR at 146, 443 N.E.2d at 1381.

There was no showing of an immediate need for action in this case. The reassignment was improper and did not comply with Civ.R. 63(B).

Accordingly, this assignment of error is sustained.

### III

Sifco's first cross-assignment of error states:

"The court erred by denying Sifco's motion for directed verdict on Potocnik's claim of handicap discrimination."

A party is entitled to a directed verdict if, construing the evidence in favor of the nonmoving party, reasonable minds can come to but one conclusion on any determinative issue, and that conclusion is in favor of the moving party. Civ.R. 50(A)(4). If there is substantial, competent evidence to support the nonmoving party, upon which evidence reasonable minds could reach different conclusions, the motion for a directed verdict must be denied. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. The weight of evidence or credibility of witnesses is not considered in ruling upon a motion for directed verdict. *Id.*

Cross-appellant Sifco asserts there was no evidence that cross-appellee Potocnik was handicapped. "Handicap" was defined in R.C. 4112.01(A)(13) as "a medically diagnosable, abnormal condition which is expected to continue for a considerable length of time, whether correctable or uncorrectable by good medical practice, which can reasonably be expected to limit the person's functional ability, including, but not limited to, seeing, hearing, thinking, ambulating, climbing, descending, lifting, grasping, sitting, rising, any related function, or any limitation due to weakness and significantly decreased endurance, so that he can not perform his everyday routine living and working without significantly increased hardship and vulnerability to what are considered the everyday obstacles and hazards encountered by the nonhandicapped." Am.H.B.No. 314, 143 Ohio Laws, Part III, 4154, 4156.

Dr. Schwartz testified that Potocnik suffered from an anxiety disorder with panic attacks. Drs. Schwartz and Fagan stated that this disorder could result in inability to work for a period of years. Dr. Schwartz found that Potocnik could not work due to the anxiety disorder, and filled out insurance forms to this effect. Cross-appellant contends that Dr. Schwartz's conclusion that Potocnik could not work was based only on subjective evidence. Sifco's argument goes to the weight of the evidence, which is not considered on a motion for directed verdict. Dr. Fagan recommended that Potocnik have work restrictions. Dr. Schwartz stated that during an anxiety spell, Potocnik's ability to perform his daily living routine would be affected. Thus, there was sufficient evidence to conclude that Potocnik

had a medically diagnosable abnormal condition which limited his functional ability, so that he could not perform his everyday routine living and working without significant hardship.

The evidence does not show that Potocnik was handicapped at the time of his discharge, however. Potocnik testified that he was fully able to return to work at that time. Dr. Schwartz testified that Potocnik was much improved and could return to work without restriction. However, a "handicapped person" also includes (1) a person who has had a handicap who no longer has any functional limitation, but is treated by the employer as having a handicap; and (2) a person who is "regarded as" handicapped by the employer. Ohio Adm.Code 4112-5-02(H). This court had held that the Ohio Civil Rights Commission did not exceed its authority by promulgating this definition. *Cleveland v. Ohio Civ. Rights Comm.* (1994), 98 Ohio App.3d 243, 648 N.E.2d 516.

■ There was substantial, competent evidence that Sifco treated Potocnik as handicapped, or regarded him as handicapped. Potocnik testified that Ovark terminated him and asked, "How do I know you are not going to get sick again or that you are not going to blow up?" Although Ovark denied asking this question, credibility is an issue for the jury. Ovark refused to accept the work releases from Drs. Tandon and Schwartz and would not permit Potocnik to return to work, which shows she believed that appellant still had health problems.

■ Cross-appellant argues that Ovark's alleged question was a "casual remark" and insufficient to show discrimination. *Gagne v. Northwestern Natl. Ins. Co.* (C.A.6 1989), 881 F.2d 309. While isolated, ambiguous statements are not sufficient to show discrimination, comments referring directly to the plaintiff-employee may establish discrimination. See *Phelps v. Yale Security, Inc.* (C.A.6 1993), 986 F.2d 1020. Here, the alleged question made by Ovark referred directly to Potocnik, and was offered as the reason for his discharge. Ovark's question is evidence that Sifco regarded Potocnik as handicapped and discharged him at least in part because of the perceived handicap.

Substantial, competent evidence existed proving that Sifco regarded Potocnik as handicapped. Reasonable minds cannot come to but one conclusion on any determinative issue in favor of Sifco on the handicap discrimination claim. The trial court did not err in denying the motion for a directed verdict.

Accordingly, this assignment of error is overruled.

## IV

Cross-appellant's second assignment of error states:

"The court erroneously instructed the jury on handicap discrimination."

The trial court instructed the jury that the plaintiff must prove (1) that he was handicapped or regarded as handicapped, (2) that the employer's action was taken at least in part because plaintiff was handicapped, and (3) the that plaintiff could safely and substantially perform the essential functions of his job. If the plaintiff proves this prima facie case, defendant must prove by a preponderance of the evidence that the plaintiff was discharged for a legitimate, nondiscriminatory reason.

■ This instruction was correct. See *Columbus v. Liebhart* (1993), 86 Ohio App.3d 469, 471–472, 621 N.E.2d 554, 555–556. The instruction was appropriate because this was a "mixed motive" case, where the employee presented direct evidence that discrimination was a substantial factor in his discharge. See *Price Waterhouse v. Hopkins* (1989), 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268. In a mixed motive case, the burden of persuasion shifts to the employer to prove a legitimate nondiscriminatory reason for the adverse action. *Id.;* cf. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.

The direct evidence of discrimination was Ovark's question upon Potocnik's discharge: "How do I know you are not going to get sick again or that you are not going to blow up?" Cross-appellant asserts that this evidence was not sufficient to show direct evidence of discrimination because it was a "casual remark." *Gagne, supra.* As we discussed above, this remark referred directly to Potocnik and was offered as a reason for his discharge, so it was sufficient to show discrimination.

Cross-appellant contends that the jury should have been instructed that any alleged discriminatory acts that occurred before October 8, 1991 cannot be considered. Potocnik filed his complaint on October 7, 1992, and cross-appellant asserts that there is a one-year statute of limitations. See *Junke v. MK–Ferguson Co.* (Feb. 3, 1994), Cuyahoga App. No. 64625, unreported, 1994 WL 30430. The Supreme Court of Ohio has recently ruled that a six-year statute of limitations applies to actions under R.C. 4112.99. See *Cosgrove v. Williamsburg of Cincinnati Mgt. Co.* (1994), 70 Ohio St.3d 281, 638 N.E.2d 991. Thus, an instruction limiting the time period considered by the jury was not necessary.

■ The trial court did not err in instructing the jury on Potocnik's claim of handicap discrimination, although the evidence showed that Potocnik was not handicapped, but was regarded as handicapped at the time of his discharge. The jury had to know the definition of "handicap" to determine whether Potocnik was regarded as handicapped.

Cross-appellant asserts that an instruction was required stating that the jury cannot focus upon the soundness of the employer's business judgments. See *Wilkins v. Eaton Corp.* (C.A. 6 1986), 790 F.2d 515. Such an instruction is not

required. The instruction given by the trial court adequately set out the appropriate burden of proof.

Accordingly, this assignment of error is overruled.

V

Cross-appellant's third assignment of error states:

"Whether the court should have granted sifco [*sic*] directed verdict motion on the fraud claim and whether instructing the jury on fraud was erroneous."

 Cross-appellant contends that Potocnik failed to present evidence on the essential elements of fraud.

"A claim of common-law fraud requires proof of the following elements: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 49, 570 N.E.2d 1076, 1083.

 Potocnik alleged that Sifco had a duty to disclose the fact that Potocnik had to report to Ovark three weeks before the expiration of the leave, so that a doctor's appointment could be made. Sifco also allegedly had a duty to inform Potocnik that he could return to work before the one-year leave was over. There was no evidence that Sifco intended to mislead Potocnik by failing to disclose these facts. Ovark testified that she assumed appellant would know he had to report to work in time to get a doctor's examination, because of the letter she sent him in September 1990. Ovark also believed that it was obvious that an employee was expected to return to work as soon as the employee recovered, and did not have to wait until the end of the year. Also, based on these facts, reasonable minds could not conclude that Potocnik justifiably relied on these "concealments."

Potocnik also asserts that Popa misrepresented the procedure for returning to work. There was no evidence that Popa knew his statement was false, or intended to mislead Potocnik. Potocnik did not justifiably rely on this statement because he was aware that Popa had no authority in authorizing return from sick leave and because Potocnik was informed by Ovark's letter that a physical by a company doctor was required.

Popa allegedly made another misrepresentation when he told Potocnik in the summer of 1991 that Potocnik had plenty of time to return to work. This

statement was not false, because the leave expired in October. Cross-appellee also contends that Ovark's statement that he waited too long to return to work was a misrepresentation, because Vunjak was permitted to see a company doctor after Vunjak's leave expired. Potocnik did not act in reliance upon this statement, however.

Substantial, competent evidence was missing on several essential elements of fraud. Reasonable minds could only conclude that fraud did not occur. The trial court erred in denying the motion for directed verdict on the fraud claim.

Accordingly, this assignment of error is sustained.

## VI

Cross-appellant's fourth assignment of error states:

"The trial court erroneously instructed the jury on front pay or loss of future earnings."

Front pay is available as a remedy for other actions under R.C. 4112.99, such as race discrimination (*Keys v. U.S. Welding, Fabricating Mfg., Inc.* [N.D.Ohio 1992], 59 F.E.P. 1537, 1544, 1992 WL 218302), age discrimination (*Worrell v. Multipress, Inc.* [1989], 45 Ohio St.3d 241, 543 N.E.2d 1277), and sex discrimination (*Crain v. Cincinnati Auto. Club, Inc.* [May 7, 1990], S.D.Ohio No. C–1–88–0295, unreported, 1990 WL 198404). We hold that front pay is available for handicap discrimination as well, when appropriate.

The trial judge must determine if front pay is appropriate and the jury determines the amount of front pay. *Worrell, supra; Fite v. First Tennessee Prod. Credit Assn.* (C.A.6, 1989), 861 F.2d 884. Front pay can only be awarded if the trial judge, in his discretion, determines that reinstatement is impractical or inadequate. *Worrell, supra,* 45 Ohio St.3d at 246, 543 N.E.2d at 1282; *Davis v. Combustion Eng.* (C.A.6, 1984), 742 F.2d 916, 923. Here, there was no evidence that Potocnik's job at Sifco was unavailable. Potocnik stated that he wanted to return to work at Sifco. Potocnik did testify that because he was forced to take an additional year's leave without pay, his wife left him and he suffered panic attacks. This evidence does not establish that a relationship of animosity existed between the parties, such that reinstatement was inappropriate. See *Duke v. Uniroyal* (C.A.4, 1991), 928 F.2d 1413, 1423. An award of front pay was inappropriate because the evidence did not show that reinstatement was impractical or inadequate.

Potocnik is entitled to reinstatement. The prevailing plaintiff in a discrimination suit is entitled to "make whole" relief. See *Ohio Civ. Rights Comm. v. Ingram* (1994), 69 Ohio St.3d 89, 93, 630 N.E.2d 669, 672. A plaintiff is

made whole by returning him to the position that he would have occupied had the discrimination not occurred. *McNeil v. Economics Laboratory, Inc.* (C.A.7, 1986), 800 F.2d 111, 118. The plaintiff is presumptively entitled to reinstatement, unless the employer presents evidence that reinstatement is inappropriate. *Nord v. U.S. Steel* (C.A.11, 1985), 758 F.2d 1462; *In re Lewis* (C.A.6, 1988), 845 F.2d 624, 630; *Jones v. Ohio Dept. of Mental Health* (S.D.Ohio 1987), 687 F.Supp. 1169, 1173. Here, there was no evidence reinstatement was inappropriate. Potocnik is entitled to reinstatement with full seniority and benefits.

Sifco argues that Potocnik elected the remedy of front pay, and did not assert his right to reinstatement at trial. The trial transcript reveals that Potocnik's attorney requested that the trial judge determine whether reinstatement or front pay was appropriate. Potocnik's testified he desired to return to work at Sifco. Potocnik did not waive his right to reinstatement.

The trial judge erred in permitting an award of front pay, when reinstatement was the appropriate remedy.

Accordingly, this assignment of error is sustained.

## VII

Cross-appellant's fifth assignment of error states:

"The court's instruction on 'damages' was in error to the prejudice of Sifco."

The trial judge instructed the jury that if they found the defendant discriminated or committed fraud, they must determine damages. If the jury found that Sifco committed fraud, they may award back pay and benefits. If the jury found that Sifco discriminated against Potocnik because of his handicap, and they did not award back pay for fraud, they may award back pay and benefits for discrimination.

Cross-appellant contends that this jury instruction was misleading and resulted in a double back pay award. We believe that the instructions given were understandable by the jury and not prejudicial to Sifco. Potocnik testified that the back pay and benefits from October 12, 1990 to the date of the trial amounted to $84,251. The jury verdict of $81,432 was not necessarily the result of a double damage award.

It would be reasonable for the jury to award back pay from October 12, 1990, the date on which Potocnik started the unpaid leave. The jury could find that Sifco discriminated against Potocnik by requiring him to take unpaid leave because of his handicap. It is reasonable to conclude that Potocnik could substantially perform the functions of his job, despite the work restrictions imposed by Dr. Fagan. Sifco was obligated to make reasonable accommodations

to Potocnik's handicap, unless Sifco suffered undue hardship. Ohio Adm.Code 4112–5–08(E). The evidence did not show that the work restrictions would result in undue hardship.

 Cross-appellant also asserts that it was error to instruct the jury to award "back pay and benefits" for fraud. The jury should have been instructed to award damages, "as will fairly compensate [the party] for the wrong suffered." See *Shover v. Cordis* (1991), 61 Ohio St.3d 213, 217, 574 N.E.2d 457, 461. In this case, back pay and benefits are fair compensation for the wrong suffered.

Accordingly, this assignment of error is overruled.

## VIII

Cross-appellant's sixth assignment of error states:

"The court erred to the prejudice of Sifco by instructing the jury on punitive damages."

Although we held that the directed verdict on the fraud claim should have been granted, punitive damages are available for a handicap discrimination claim under R.C. 4112.99. *Delaney v. Skyline Lodge, Inc.* (1994), 95 Ohio App.3d 264, 269, 642 N.E.2d 395, 399, fn. 3; *Crain v. Cincinnati Auto. Club, Inc.* (May 7, 1990), S.D.Ohio No. C–1–88–0295, unreported, 1990 WL 198404; *Grant v. Monsanto Co.* (S.D.Ohio 1989), 51 F.E.P. 1593, 1989 WL 222961; see *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 134, 543 N.E.2d 1212, 1215; *Hoops v. United Tel. Co.* (1990), 50 Ohio St.3d 97, 101–102, 553 N.E.2d 252, 256–257; *Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.* (1994), 70 Ohio St.3d 281, 289, 638 N.E.2d 991, 996 (Resnick, J., concurring). Based on the above authority, we disagree with *Schillig v. Ambulance Assoc., Inc.* (Apr. 8, 1991), Stark App. No. CA–8275, unreported, 1991 WL 57155, which held that punitive damages are not available for R.C. 4112.99 actions.

 Cross-appellant contends that there was insufficient evidence of actual malice, so the jury should not have been instructed on punitive damages. See *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174; *Wilburn v. Cleveland Elec. Illum. Co.* (1991), 74 Ohio App.3d 401, 599 N.E.2d 301. Actual malice is defined as either (1) that state of mind which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of substantial harm. *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 37, 543 N.E.2d 464, 466. Here, there was evidence from which reasonable minds could conclude that Sifco consciously disregarded Potocnik's rights and knew its actions would cause substantial harm to Potocnik. The jury could conclude from

the evidence that Sifco purposefully discharged Potocnik because of his handicap. The court's instruction on punitive damages was proper.

Accordingly, this assignment of error is overruled.

## IX

Cross-appellant's seventh assignment of error states:

"The trial court lacked subject matter jurisdiction since plaintiff's claims are preempted by the Labor Management Relations Act."

The federal Labor Management Relations Act, Section 151 *et seq.*, Title 29, U.S.Code, preempts state causes of action which are substantially dependent on the analysis of a collective bargaining agreement. *Allis–Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206. Federal law does not preempt the state action if the state action can be resolved without interpreting the collective bargaining agreement. *Lingle v. Norge Div., Magic Chef, Inc.* (1988), 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410.

In this case, the collective bargaining agreement expired on May 31, 1991, months before the discriminatory act occurred on October 12, 1991. An arbitration clause does not survive the expiration of the collective bargaining agreement, except for vested rights and facts and occurrences arising before the expiration. *Litton Financial Printing Div. v. Natl. Labor Relations Bd.* (1991), 501 U.S. 190, 111 S.Ct. 2215, 115 L.Ed.2d 177. Thus, there was no collective bargaining agreement in effect and Potocnik was not required to arbitrate the dispute. Whether Potocnik's discharge was discriminatory is not dependent upon interpretation of a collective bargaining agreement, because no such agreement existed.

Even if the collective bargaining agreement was still in effect, this action was not substantially dependent on interpretation of the collective bargaining agreement. Although the agreement provided for one year of paid sick leave, and an additional year of unpaid sick leave, the agreement was silent as to the procedures for reinstatement from sick leave. The agreement stated that overtime was mandatory, unless the employee is excused by the foreman for a good reason. The agreement does not discuss whether light duty is available for personal illness. The agreement includes job descriptions. An interpretation of these job descriptions is not necessary in this case to determine whether Potocnik could safely and substantially perform the functions of his job. Thus, this case is distinguishable from *Hatlestad v. Consol. Rail Corp.* (1991), 75 Ohio App.3d 184, 598 N.E.2d 1302, where the primary issue was whether an employee with a leg prosthesis could substantially perform the functions of his job.

This action was not preempted by federal law and the trial court had subject matter jurisdiction.

Accordingly, this assignment of error is overruled.

X

Cross-appellant's eighth assignment of error states:

"The court erred to the prejudice of Sifco by permitting plaintiff to testify regarding back pay and benefits, and future pay and benefits from inadmissible evidence."

Potocnik testified as to the wages and benefits he received at Sifco and calculated his back pay and front pay damages. During this testimony, plaintiff's exhibit 27, a chart summarizing plaintiff's calculations, was shown to the jury. Exhibit 27 was not admitted into evidence because the jury had sufficient evidence to calculate damages.

Cross-appellant contends that Potocnik's testimony on damages was inadmissible because Exhibit 27 was not admitted. Potocnik had independent knowledge of the wages and benefits he received and the calculations performed. His testimony on damages was not improper. Expert testimony on back pay was not required. Technical or specialized knowledge is not required to calculate back pay. See Evid.R. 702. Expert testimony is not required to calculate front pay. See, generally, *Sahrbacker v. Lucerne Prod., Inc.* (1990), 52 Ohio St.3d 179, 556 N.E.2d 497. In any case, this court has found that the award of front pay was improper. The trial court did not err in allowing Potocnik's testimony concerning damages.

Accordingly, this assignment of error is overruled.

The trial court's order granting a new trial is reversed and vacated. The award of future damages is reversed and vacated. The award of back pay and punitive damages is affirmed. Judgment is therefore entered for the plaintiff in the amount of $81,432 for back pay and $150,000 for punitive damages for a total of $231,432. It is also ordered that the plaintiff be reinstated with full seniority and benefits. This case is remanded for further proceedings.

*Judgment accordingly.*

JAMES D. SWEENEY, P.J., and HARPER, J., concur.