WARD, Appellee,

v.

HENGLE et al., Appellants.

[Cite as *Ward v. Hengle* (1997), 124 Ohio App.3d 396.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 18234.

Decided Dec. 10, 1997.

Orville L. Reed III and Steven R. Malynn, for appellants.

Richard E. Dobbins and Nicholas Swyrydenko, for appellee.

SLABY, Judge.

Appellants, Father John Hengle, Our Lady of Victory Church, and the Roman Catholic Diocese of Cleveland (collectively, "the church"), appeal from a judgment of the Summit County Court of Common Pleas in favor of appellee, Brother Gabriel Ward, on his religious-discrimination claim. We affirm in part and reverse in part.

Brother Gabriel Ward, a.k.a. Edward Ward, was employed by Our Lady of Victory Church from 1984 until June 1994 in a clerical position. Since 1979, Ward has belonged to a community of monks, known as The Brothers of Annunciation of Mary, and has worn a monk's habit as his regular clothing. Ward's community of brothers has sought, but has been unable to permanently obtain, official recognition or sponsorship from the Catholic Church. Because Ward was dressing as a monk and being addressed as "Brother" without the formal recognition of the Catholic Church, a practice that conflicted with church doctrine, Father Hengle told Ward that he would have to cease the practice while at work. Ward explained to Father Hengle that this was a religious practice, and he refused to comply. Ward's employment was terminated as a result.

Ward filed this action against the church, alleging that the church had violated state and federal law by discharging him on the basis of his religion. Both parties moved for summary judgment. The trial court denied both motions for summary judgment, concluding that there were triable issues of fact.

The case proceeded to trial. The jury found that the church had violated state and federal law by firing Ward based on his religion. Ward was awarded compensatory damages of $16,350 and punitive damages of $16,350. The trial court also awarded attorney fees to Ward. The church appeals and raises five assignments of error.

The first assignment of error is that the trial court erred in failing to grant the church's motion for summary judgment. In its motion for summary judgment, the church asserted (1) that it was exempt from liability for religious discrimination, (2) that adjudication of this controversy violated the church's rights under

the First Amendment, (3) that Ward had failed to establish a prima facie case of religious discrimination, and (4) that Ward had failed to exhaust his administrative remedies.

The church asserted that it was exempt from liability based on the following provision of Title VII of the Civil Rights Act of 1964:

"This title [Title 42, U.S.Code] shall not apply * * * to a religious corporation [or] association * * * with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation [or] association * * * of its activities." Section 2000e–1, Title 42, U.S.Code.

This exemption has been interpreted broadly to include essentially all types of religious discrimination by religious organizations. See, e.g., *Little v. Wuerl* (C.A.3, 1991), 929 F.2d 944, 950.

In opposition to the church's motion for summary judgment, Ward did not dispute that this situation fell within the exemption. Instead, Ward argued (1) that there was a material issue of fact as to whether the church had waived the exemption through its conduct, and (2) that the federal exemption did not apply to the Ohio religious-discrimination statute, R.C. 4112.02. The trial court accepted Ward's waiver argument. Although we find that this was error, the error was harmless, because Ward's second argument was persuasive. The church was not exempt from Ward's discrimination claim under state law.

Ward's waiver argument was purely a factual one. He focused primarily on the church's "Personnel Practice Guidelines" handbook, which stated that the church did not discriminate on the basis of religion when religion was not significant to the position. The trial court found that there was an issue of fact as to whether the church had waived its statutory exemption and allowed this issue to go to the jury.

Before the trial court addressed Ward's factual argument, however, it should have considered the threshold legal issue of whether the statutory exemption can ever be waived through the defendant's conduct. As the church argued in its reply to Ward's opposition to summary judgment, Ward failed to support his waiver argument with any legal authority. Ward was likely unable to find, as was this court, any authority to support his position.

The more sustainable position is the one asserted by the church, that the Title VII exemption for religious organizations cannot be waived. See *Little v. Wuerl*, 929 F.2d at 951. Despite Ward's argument to the contrary, the exemption is not a right created by statute. The Title VII claimant has a statutorily created right to pursue a religious discrimination claim against his employer. It is the claimant who has a right that can be waived through his conduct. See *Beadle v.*

*Tampa* (C.A.11, 1995), 42 F.3d 633, 635. The statutory exemption places a limitation on the claimant's right. It is not a privilege or interest subject to waiver. *Little, supra.* Ward's situation fell within the exemption, so Title VII did not apply. Because, as a matter of law, the exemption could not be waived, the trial court should not have sent the waiver issue to the jury.

■ Although the trial court erroneously denied summary judgment on Ward's federal claim because the church was exempt from liability, the error was harmless. Ward had raised his discrimination claim under both state and federal law. He established through his second argument that his state discrimination claim remained viable.

■ Ward argued that he had a claim under state law because the federal exemption for religious organizations did not apply to the Ohio discrimination statute, R.C. 4112.02. Ward contended that even if the church was exempt from liability under Title VII, he still had a cause of action under state law.

R.C. 4112.02(A) provides:

"It shall be an unlawful discriminatory practice:

"(A) For any employer, because of the * * * religion * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

Unlike the federal statute, R.C. Chapter 4112 includes no blanket exemption of religious organizations from liability for religious discrimination.

The church argued that, even though there is no exemption set forth in the statute, Ohio courts look to the law interpreting Title VII religious discrimination claims to interpret liability under R.C. 4112.02. See, *e.g., Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.* (1991), 61 Ohio St.3d 607, 609, 575 N.E.2d 1164, 1167. The issue of whether the federal exemption applies to R.C. 4112.02, however, has never been addressed by a state court in Ohio. Although Ohio courts have generally looked to the law interpreting Title VII for guidance, this has always been in the context of whether there has been a violation of R.C. 4112.02.

Ward relied on a federal case, *Dayton Christian Schools, Inc. v. Ohio Civ. Rights Comm.* (C.A.6, 1985), 766 F.2d 932, which concluded that the federal exemption did not apply to R.C. 4112.02. The court based this conclusion on the fact that no such exemption is set forth in the Ohio Revised Code, while other exemptions for specific types of religious discrimination are. For example, R.C. 4112.02(K) exempts a religious organization from liability for discrimination in housing if it shows preference to a member of its own religion. R.C. 4112.02(E)

exempts certain acts of employment discrimination, not relevant here, if based on a bona fide occupational qualification. The fact that the legislature did provide certain liability exemptions for religious organizations suggests that its failure to include a blanket exemption was by design and not inadvertence. We find this reasoning persuasive.

Moreover, although R.C. 4112.02 was enacted in 1959, prior to the 1964 enactment of Title VII and the exemption's 1972 amendment, it is fairly comprehensive, and the legislature has amended it no fewer than thirteen times since its enactment. The legislature has demonstrated a clear intent that religious organizations fall within the operation of R.C. 4112.02, except as explicitly set forth in the statute. It is not the place of this court to rewrite the statute. Because the church was not exempt from liability under state law, the trial court properly denied summary judgment on the basis of the federal exemption.

■ The church's second argument in support of summary judgment was that the trial court denied its rights under the First Amendment. Specifically, it contends that adjudication of this controversy would require the court to examine the propriety of the church's position that Ward could not dress as a Franciscan monk because he did not have the formal recognition of the church. Although it is true that the underlying dispute between Ward and the church was based on this Catholic doctrine, any inquiry into church doctrine ended there. All that was relevant to this dispute was that there was a conflict between the church's doctrine and Ward's religion and that this conflict led to Ward's termination from employment. There was no need to examine this doctrine any further or to pass upon its propriety. The church, therefore, failed to demonstrate that adjudication of this controversy would require the trial court to delve into church doctrine in violation of the First Amendment.

■ The church next argued that it was entitled to summary judgment because Ward had failed to establish a prima facie case of religious discrimination. On appeal, the church argues that the trial court erred in denying its motion for summary judgment on this basis. We cannot, however, address the propriety of the trial court's denial of the church's motion for summary judgment on the merits of Ward's claim. As the Ohio Supreme Court held in the syllabus of *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 642 N.E.2d 615:

"Any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made."

We are precluded from reversing the denial of the church's for summary judgment on this issue of fact because it ultimately went to trial and was decided in Ward's favor.

■ The church's final argument in support of summary judgment was that Ward failed to exhaust his administrative remedies. It asserted that, because Ward had remedies available to him through the Ohio Civil Rights Commission, he was required to exhaust those remedies before filing a civil action against the church. The church relied on case law, however, that predated the amendment to R.C. 4112.99. Effective September 28, 1987, R.C. 4112.99 has permitted a discrimination claimant to pursue an independent civil cause of action, without any requirement that he first exhaust his administrative remedies. See *Elek v. Huntington Natl. Bank* (1991), 60 Ohio St.3d 135, 136, 573 N.E.2d 1056, 1057–1058. Because the church failed to demonstrate any grounds for summary judgment, the trial court did not err in denying its motion. The first assignment of error is overruled.

The church's second assignment of error is that the trial court erred in failing to grant its motion for directed verdict on the issue of whether it had waived the federal exemption through its conduct. As we explained in our discussion of the church's first assignment of error, because the church could not waive the exemption, the waiver issue should not have withstood the church's motion for summary judgment. As we also explained, however, Ward's claim remained viable under state law. The trial court did not err, therefore, in failing to direct a verdict in favor of the church. The second assignment of error is overruled.

As its third assignment of error, the church contends that the trial court erred in failing to direct a verdict in its favor because adjudication of this controversy violated its rights under the First Amendment. The church merely reiterates the First Amendment argument that it raised in its motion for summary judgment. As we explained in our discussion of the church's first assignment of error, the argument is without merit. The third assignment of error is overruled accordingly.

The church's fourth assignment of error is that the trial court erred in failing to grant its motion for judgment notwithstanding the verdict. The church asserts on appeal that the trial court erred in rejecting the following grounds raised through its motion: (1) that the verdict was not supported by the evidence because the church presented ample evidence that accommodation of Ward's religious practice would cause it undue hardship, (2) that any award of compensatory damages in excess of $11,050 was not supported by the evidence, and (3) there was no evidence of any malice to support the award of punitive damages.

■ Each of these arguments is reviewed in light of the fact that a favorable ruling on a motion for judgment notwithstanding the verdict is not easily obtained. The evidence must be reviewed in a light most favorable to the nonmoving party, and where there is substantial evidence to support his side of the case, upon which reasonable minds could reach different conclusions, the motion must be denied. *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 429–430, 344 N.E.2d 334, 338.

■ The church contends that the jury should have found that accommodating Ward's religious practice would cause undue hardship on the conduct of its business. The church asserted that it clearly proved such "undue hardship," thereby defeating Ward's discrimination claim.

■ After Ward established a prima facie claim of religious discrimination (that he held a sincere religious belief that conflicted with a requirement of his employment, that he informed his employer of this conflict, and that he was discharged for failing to comply with this requirement), the burden shifted to the church to show either that it reasonably accommodated Ward or that it could not reasonably accommodate him without undue hardship. *S. Wind Motel v. Civil Rights Comm.* (1985), 24 Ohio App.3d 209, 209–210, 24 OBR 386, 386–388, 494 N.E.2d 1158, 1158–1160; *Cooper v. Oak Rubber Co.* (C.A.6, 1994), 15 F.3d 1375, 1378. Undue hardship need only be a de minimis cost to the employer. *Beadle v. Tampa*, 42 F.3d at 635.

The church argued in its motion, and argues again on appeal, that it had presented ample evidence of undue hardship. This contention, however, was not supported by any citation to the trial transcript. Our review of the record reveals that the jury reasonably rejected the church's argument that accommodating Ward's religious practice would cause undue hardship on its business. The church presented no evidence of any undue hardship. Ward did not deal with the public, but worked virtually by himself; no coworkers or parishioners ever complained about his wearing the habit to work; and the priest and other church representatives testified that Ward's practice of wearing the habit did not interfere with his work, the church's business, or the parishioners' worship in any way. As the jury's rejection of the church's undue-hardship defense was supported by competent, credible evidence, it was not against the manifest weight of the evidence. See *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

■ The church next challenges the award of compensatory damages. The jury awarded Ward $16,350 in compensatory damages ($11,050 for lost wages and $5,300 for "compensatory damages or losses in addition to his salary"). Ward

presented undisputed evidence, and the jury was instructed, that he suffered lost wages of $11,050, his annual salary at the time.

The church contends that there was no evidence to support the award of $5,300, because Ward incurred no additional losses. Ward argues that he presented evidence that due to his termination, he incurred a health insurance expense, and he sustained pain and suffering. Ward did present evidence that he had lost his health care coverage and, as a result, was paying premiums of $600 per quarter. The record is devoid, however, of any evidence of any pain and suffering by Ward. At best, he said that when he lost his job, he was "shocked." This was the only reference to Ward's emotional state. He did not follow that up with any evidence that he suffered any emotional impact, inconvenience, or any other type of nonmonetary suffering whatsoever. There was no evidence from which the jury could even infer that Ward experienced any pain or suffering. Given the total lack of evidence to support $2,900 of the compensatory damages awarded, that portion of the award was not warranted.

The church finally contends that the award of punitive damages was unsupported by any evidence. The parties agree, and the jury was instructed, that punitive damages could be awarded in this case upon a showing of actual malice. See, e.g., *Potocnik v. Sifco Industries, Inc.* (1995), 103 Ohio App.3d 560, 574, 660 N.E.2d 510, 518–519. Actual malice requires proof either that the defendant's conduct (1) was characterized by hatred, ill will, or a spirit of revenge, or (2) demonstrated a conscious disregard for the rights and safety of other persons that has a great probability of substantial harm. *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus. Punitive damages are intended to deter conduct resulting from a mental state that is "so callous in its disregard for the rights and safety of others that society deems it intolerable." *Calmes v. Goodyear Tire Co.* (1991), 61 Ohio St.3d 470, 473, 575 N.E.2d 416, 419.

The church contends that punitive damages were not warranted because Ward presented no evidence of malice. Our review of the record supports this contention. Ward failed to present any evidence from which the jury could infer that Father Hengle or any other representative of the church acted with hatred, ill will, or a spirit of revenge, or with reckless indifference toward Ward's rights. He merely presented evidence that, at best, established that Father Hengle and the church committed one act of religious discrimination and nothing more egregious than that. All the evidence tends to demonstrate that the allegedly discriminatory action of the church and Father Hengle was solely motivated by their own religious beliefs, not a spirit of revenge or ill will of any sort. There was absolutely no evidence of any bad blood between Hengle and Ward or any prior acts of discrimination. As the jury had no basis upon which to award punitive damages, that portion of the church's assignment of error has merit.

The fourth assignment of error is overruled in part and sustained as it relates to the award of punitive damages and $2,900 of the compensatory damage award.

The church's fifth assignment of error is that the trial court erred in its selection of the jury by systematically excluding members of the Roman Catholic faith from the venire. The church raises this challenge for the first time on appeal. A fundamental rule of appellate review is that a reviewing court will not consider as error any issue that a party was aware of but failed to bring to the trial court's attention at a time that it could have been remedied. *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.* (1993), 91 Ohio App.3d 76, 80, 631 N.E.2d 1068, 1071; *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph two of the syllabus. Because the church did not raise this issue below, we will not consider it now. The fifth assignment of error is overruled.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

QUILLIN, P.J., and BAIRD, J., concur.