DECISION AND JUDGMENT ENTRY
This appeal comes to us from the Erie County Court of Common Pleas. There, appellant, following the return of a jury verdict, was convicted and sentenced for drug trafficking, drug possession and felonious assault of a peace officer. Because we conclude that appellant's trial was proper, we affirm his conviction. However, because the trial court's findings to justify imposing maximum consecutive sentences on five counts were deficient, we vacate appellant's sentence and remand for resentencing.
On December 16, 1996, officers of the Perkins Township Police Department and agents of the Ohio Attorney General's Office executed a "buy bust" in a grocery store parking lot in Perkins Township, Erie County, Ohio. In a "buy bust," an undercover officer or police confidential informant contacts a suspected drug dealer to arrange a drug purchase. Typically, police surreptitiously observe the transaction, following which the drug dealer is arrested.
On December 16, a Perkins Township police confidential informant called appellant, Donald Walk, from a pay phone in a grocery store parking lot. The informant sought to purchase a "six pack," local slang for a one-sixteenth ounce rock of crack cocaine. The confidential informant was equipped with a remote transmitting device and accompanied by an undercover agent.
When appellant drove into the parking lot, the confidential informant went to appellant's car and exchanged $100 in marked money for a single piece of crack cocaine contained in a plastic baggie. When officers posted nearby heard that the transaction was completed, they descended on appellant's car. One police vehicle blocked the rear of appellant's car. A second, containing the Perkins Township Police Chief and another officer, pulled in front of appellant's car. The Perkins Township Chief emerged from his car and positioned himself between his car and appellant's. At this point, appellant's car lunged forward toward the chief until another officer entered appellant's vehicle and put it into "park." Over appellant's resistance, officers removed him from the car and subdued him on the ground. After the officers had placed appellant in a cruiser, they found two plastic baggies on the ground near where appellant was subdued. The baggies resembled the one purchased by the confidential informant and also contained crack cocaine.
Following appellant's arrest, police impounded the car which he had been driving. The following morning, Stephanie Bradley, who described herself as appellant's girlfriend and owner of the impounded car, appeared to reclaim the car. After discussion with police, Bradley consented to a search of the home she reportedly shared with appellant. During the search, police found more crack cocaine, marijuana, and nearly $2,500 in cash.
Appellant was eventually indicted on two counts of drug possession (for the cocaine found in the parking lot and at Stephanie Bradley's home), tampering with evidence (for attempting to get rid of the crack found on the ground in the parking lot), trafficking (for the sale to the confidential informant), with a school zone specification (the grocery store parking lot was nine hundred sixty-six feet from the border of the tennis courts at Sandusky High School), and felonious assault on a peace officer (for attempting to run down the Perkins Township Police Chief).
Appellant pled not guilty and the matter proceeded to a jury trial. The jury convicted appellant on all counts. The trial court immediately sentenced appellant to the maximum prison term on each count (eighteen months for each possession; five years each for trafficking and tampering; and ten years for assault on an officer). The court also ordered that the sentences be served consecutively for a total of twenty-three years imprisonment. The court then imposed a fine of $45,000.
Several weeks later, prior to the transfer of appellant's custody to the department of corrections, notice was taken that the sentence initially imposed did not comport with the newly enacted provisions of R.C. 2929.11 et seq.. On June 3, 1997, a second sentencing hearing was held at which the trial court attempted to make appropriate findings under the sentencing statute and again sentenced appellant to a maximum consecutive term of imprisonment on each count. The court reduced the fine to $5,000.
Appellant's initial attempt at a direct appeal failed when this court dismissed the appeal after appellant's appellate counsel failed to timely file a brief. This appeal is now before the court on appellant's successful motion to reopen pursuant to App.R. 26(B).
Appellant sets forth the following four assignments of error:
"ASSIGNMENT OF ERROR 1:
 "THE TRIAL JUDGE DID NOT HAVE JURISDICTION TO HEAR THE CASE BECAUSE THE MATTER WAS ASSIGNED TO JUDGE ANN MASCHARI AND THE RECORD IS DEVOID OF ANY JOURNAL ENTRY EITHER APPOINTING OR REASSIGNING JUDGE ROBERT WALKER TO THE CASE AS SET FORTH IN THE GUIDELINES FOR ASSIGNMENT OF JUDGES.
"ASSIGNMENT OF ERROR II:
 "APPELLANT'S RIGHTS WERE VIOLATED WHEN THE TRIAL COURT IMPOSED AN ILLEGAL SENTENCE BY IMPOSING MAXIMUM CONSECUTIVE SENTENCES IN VIOLATION OF R.C. 2929.14(B) AND (C) AND BY THE IMPOSITION OF THE MAXIMUM FINE ($45,000.00) WITHOUT A DETERMINATION OF APPELLANT'S ABILITY TO PAY SUCH FINES AS REQUIRED BY R.C. 2929.181.
"ASSIGNMENT OF ERROR III:
 "THE TRIAL COURT COMMITTED ERROR WHEN IT FAILED TO ADDRESS THE JURY QUESTIONS IN OPEN COURT AND ON THE RECORD.
"ASSIGNMENT OF ERROR IV:
 "DONALD WALK WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AS WELL AS THE SIXTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
 A. COUNSEL FAILED TO OBJECT TO AN OFFICER TESTIFYING ABOUT ALLEGATIONS OF PRIOR ACTS OF VIOLENCE COMMITTED BY APPELLANT.
 B. COUNSEL FAILED TO OBJECT TO THE TRIAL COURT ANSWERING JURY QUESTIONS OFF THE RECORD.
 C. COUNSEL FAILED TO OBJECT TO THE IMPOSITION OF MAXIMUM CONSECUTIVE TERMS OF IMPRISONMENT WHEN APPELLANT DID NOT MEET THE STATUTORY CRITERIA SET FORTH IN 2929.14(B)."
 I.
In his first assignment of error, appellant asserts that the trial court, presided over by a visiting judge, did not have jurisdiction over his case because the record does not contain a letter of assignment from the Chief Justice of the Supreme Court of Ohio. The state attached to its brief a general letter of assignment of the visiting judge to the Erie County Court of Common Pleas for the period in which the trial at issue occurred. The state, however, did not move to supplement the record with this letter of assignment. Consequently, pursuant to App.R. 9, we may not consider this document. Nevertheless, this assignment of error must fail.
Appellant raises his concern about the absence of an assignment letter for the first time on appeal. He raised no objection before the trial court when the inclusion of the letter could have been easily remedied. When a defendant fails to call the court's attention to a purported error when it could have timely been avoided or corrected, this constitutes a waiver of that error. State v. Peagler (1996), 76 Ohio St.3d 496, 499;Potocnik v. Sifco Industries, Inc. (1995), 103 Ohio App.3d 560, 567; compare, Reynolds v. Hazelberg (Aug. 6, 1999), Erie App. No. E-98-082, unreported.
Accordingly, appellant's first assignment of error is not well-taken.
 II.
In his third assignment of error, appellant complains that during jury deliberations the trial judge went into the jury room to respond to jurors' questions, rather than calling the jury back to the courtroom and responding in appellant's presence. Appellant maintains that these communications with the jury violated his federal and state rights to due process of law and operated to his prejudice.
 "The Fifth Amendment to the federal Constitution, enforceable against the states through the Fourteenth Amendment, prohibits the various states from depriving any person `of life, liberty, or property, without due process of law.' Similarly, Section 10, Article I of the Ohio Constitution mandates that '[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel.' As the constitutional principle of `due process' has evolved on both the state and federal levels, the courts have broadened its guarantees to mandate the presence of the defendant, absent waiver of his rights or other extraordinary circumstances, at every stage of his trial. See Illinois v. Allen (1970), 397 U.S. 337, 338; State v. Grisafulli (1939), 135 Ohio St. 87
[13 O.O. 440]; Shields v. United States (1927), 273 U.S. 583, 588-589; Jones v. State (1875), 26 Ohio St. 208. In Ohio, the expanded scope of the Due Process Clause, at least in criminal proceedings, had been embodied in Crim.R. 43(A) which provides, in pertinent part, that a `defendant shall be present at * * * every stage of the trial * * *." State v. Williams (1983), 6 Ohio St.3d 281, 286.
For this matter, the critical words of the above quoted passage are "absent waiver." A criminal defendant may waive even rights which are constitutionally imposed. State v. Girts (1997), 121 Ohio App.3d 539,557, citing Boykin v. Alabama (1969), 395 U.S. 238, 243, and UnitedStates v. Mezzanatto (1995), 513 U.S. 196, 201. In this matter, appellant's counsel not only failed to object to the judge visiting the jury room to respond to questions, but affirmatively condoned the procedure in each instance on the record in open court. Given this express waiver, appellant cannot now be heard to complain that the proceeding was disadvantageous to him. Accordingly, appellant's third assignment of error is not well-taken.
 III.
In his fourth assignment of error, appellant asserts that he was denied effective assistance of counsel.
 "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. * * * Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v. Washington (1984), 466 U.S. 668, 687. Accord, State v. Smith (1985), 17 Ohio St.3d 98, 100.
Scrutiny of counsel's performance must be deferential. Strickland v.Washington at 689. In Ohio, a properly licensed attorney is presumed competent and the burden of proving ineffectiveness is the defendant's.State v. Smith, supra. Counsel's actions which "might be considered sound trial strategy," are presumed effective. Strickland v. Washington at 687. "Prejudice" exists only when the lawyer's performance renders the result of the trial unreliable or the proceeding unfair. Id. Appellant must show that there exists a reasonable probability that a different verdict would have been returned but for counsel's deficiencies. Seeid. at 694. See, also, State v. Lott (1990), 51 Ohio St.3d 160, for Ohio's adoption of the Strickland test.
Appellant enumerates three instances of conduct by his trial counsel which he argues constituted deficient performance: trial counsel's failure to object to an instance of police testimony, the trial court's response to jury questions outside appellant's presence, and the impositioned maximum consecutive terms of imprisonment during sentencing.
In the first instance, one of the arresting officers, while testifying, volunteered that prior to the operation he had been briefed that appellant was likely armed, might resist arrest, and had allegedly previously committed an act of violence directed at a woman.
Trial counsel did not contemporaneously object to this testimony, but did insert an objection and a request for an instruction that the jury disregard the testimony following a recess. At that point, the court opined that such an instruction might only serve to draw attention to the offending testimony. Appellant's trial counsel acquiesced to the court's analysis and withdrew her request. This is a strategic trial decision which is presumed effective. The same may be said of counsel's express waiver of appellant's presence when the judge answered the jury's questions.
With respect to objections to sentencing, because of our decision in the remaining assignment of error, this failure did not operate to appellant's prejudice. Accordingly, appellant's fourth assignment of error is not well-taken.
 IV.
We have reserved our discussion of appellant's assignment of error concerning sentencing until now.
Clearly, after the 1995 felony sentencing reforms, to order maximum consecutive terms of imprisonment without a hearing or without findings is erroneous. See State v. Edmondson (1999), 86 Ohio St.3d 324, 329. However, a trial court may properly modify a sentence prior to the time a defendant is delivered from a temporary detention facility to a prison.City of Columbus v. Messer(1982), 7 Ohio App.3d 266, 268. Such a procedure may be used to correct infirmities in the original sentencing procedure. See Beatty v. Alston (1975), 43 Ohio St.2d 126. In this matter, prior to appellant's delivery into the custody of the department of corrections, the trial court recalled appellant for a resentencing hearing, after which the court issued findings and reimposed maximum consecutive sentences on all counts, but reduced the fine to $5,000. It is this later proceeding which we shall examine.
In 1995 and 1996, the Ohio legislature enacted legislation designed to reform felony sentencing in this state. See 1995 Am.Sub.S.B. 2 and 1996 Am.Sub.S.B. 269. Codified in R.C. chapter 2929, the legislation defined the intended purposes of felony sentencing as to, "* * * protect the public from future crime by the offender and others and to punish the offender. * * *" R.C. 2929.11(A). Under this legislation, "* * * minimum sentences are favored for first time imprisonment and maximum sentences are disfavored generally." State v. Edmondson, supra, at 325. Sentences imposed are to be, "* * * commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). Ultimately, unless a prison term is statutorily mandated, implementation of the purposes of the sentence statutes rests in the sound discretion of the sentencing court. R.C. 2929.12(A); State v. Cooks (1997), 125 Ohio App.3d 116, 118. The statute also sets forth a number of factors which must be considered in the exercise of that discretion. Id.
R.C. 2929.13 provides guidance to the sentencing court as to whether to impose a term of imprisonment. There is a presumption in favor of imprisonment for first and second degree felonies and guidance against imprisonment for fourth and fifth degree felonies. R.C. 2929.13(B)-(E). Special guidance is provided in R.C. 2925.03 and 2925.11 for specific drug offenses.
R.C. 2929.14(B) requires that, for a defendant who has not previously been sentenced to prison, the sentencing court impose the shortest term within the available sentencing range unless the court finds on the record that such a sentence would demean the seriousness of the offense or not adequately protect the public. The maximum term within the sentencing range may be imposed only if the sentencing court finds the offender committed the worst form of the offense, the offender poses the greatest likelihood of committing future crimes or the maximum is required by law. R.C. 2929.14(C). When the court makes such a finding, R.C. 2929.19(B)(2) requires that the court state its reasons for imposing the maximum sentence. State v. Edmondson at 328.
Similar rules apply to the imposition of consecutive terms of imprisonment. Unless consecutive terms are required by law, see R.C.2929.14(E)(1), (2), and (3), a court may impose consecutive sentences only when it concludes that the sentence is 1) necessary to protect the public and punish the offender; 2) not disproportionate to the conduct of the offender and the danger that he or she poses; and 3) the court finds one of the following: a) the crimes were committed while awaiting trial or sentencing, under sanction or under post release control; b) the harm caused by multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of his offense; or c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public. R.C. 2929.14(E)(4). Again, as in maximum sentences, the court must articulate its reasons for imposing consecutive sentences. R.C. 2929.19(B)(2).
In the present matter, no presentence investigation was ordered. The record in the second sentencing hearing reveals only that the prosecuting attorney made an oral presentation to the court of appellant's "prior record" which consisted of misdemeanor traffic offenses, two 1985 assaults, a 1992 resisting arrest, a disorderly conduct, and a 1996 domestic violence — all misdemeanors. Following this presentation and after the court afforded appellant the opportunity to address the court, the court addressed appellant.
 "THE COURT: This is crack-cocaine. This is a poison; it's an evil poison. My job here is to protect the public and I think I do that. At the same time we've got to say to you, Donald Walk, the time has come. This is the line. That's where it ends. No more from this point on.
 "Of course you intended to cause harm. There's no question about it. I appreciate the fact that you didn't induce things, you didn't start anything. No. You didn't really start anything, in the sense that the statute means to start something. It wasn't your idea to go out there and start a fight but you did worse than that. You try to avoid it.
 "And of course there is recidivism. I don't care whether it's a felony, a misdemeanor, a slap on the wrist. You are guilty of recidivism. You can't stay away from this stuff. Your prior record has, even though it may be misdemeanors and so on an so forth, clearly indicates that you haven't learned squat.
 "I should think if I were out there 15 minutes, I would learn something. I wouldn't want to be around him 15 minutes in that milieu. I think rather than learn something you have increased your propensity to crime by going from what we used to call minor league baseball. You're no longer in Triple A. You're up to the majors, man. You're up there to the majors.
 "And frankly, you don't have any remorse whatsoever. You're concerned primarily with, well, I didn't do this and I didn't do. Somebody else did it. Somebody else did it. Point the finger. Point the finger. Listen to what I say."
The court then imposed a $5,000 fine, maximum terms for each of the five counts of which appellant was convicted and ordered that the terms of imprisonment be served consecutively. In its journal entry, beyond a finding that appellant was not a candidate for community sanctions, the court made no finding that imposing the minimum term of imprisonment would demean the seriousness of the offense or fail to protect the public, nor did the court make any R.C. 2929.14(E) findings sufficient to justify consecutive sentences.
The trial court failed, either from the bench or in writing, to state the mandatory findings prerequisite to imposing maximum or consecutive sentences. Neither did the court find that minimum sentences for these offenses would demean the seriousness of appellant's conduct nor adequately protect the public from future crime. Indeed, upon our review of the record, there is insufficient evidence to support such findings.
After consideration of all this, we conclude that the trial court failed to make the requisite findings to support the imposition of maximum consecutive sentences for this offender. Moreover, the court's findings were also deficient to override the statutory presumption that this defendant who had not previously been sentenced to prison should serve no more than the minimum term allowable for his offenses. Accordingly, appellant's second assignment of error is well-taken.
Upon consideration whereof, the judgment of the Erie County Court of Common Pleas is affirmed in part and reversed in part. Pursuant to R.C.2953.08(G), we vacate the sentence imposed and remand the matter to said court so that it may modify appellant's sentence to minimum terms for each count to run concurrently. Costs to appellee.
James R. Sherck, J.
 Mark L. Pietrykowski, J.
 George M. Glasser, J., JUDGES CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.